# Over *against* Blackstone.

In an action of trespass against two or more defendants, if there be no evidence given against one of them, the court may direct a verdict to be rendered for him, and he may be sworn as a witness for the other defendants.

When, in an action of trespass which involves a question as to the right to personal property, a witness testified that when he had sold and delivered the property to the plaintiffs he had told them that he had previously made a sale of the same property to the defendant, it is error to refuse to permit the plaintiffs to ask the witness whether he had not at the same time told them that the previous sale was but a conditional one, and the condition had been complied with.

[Over v. Blackstone.]

ERROR to the Common Pleas of *Clarion* county.

This was an action of trespass *de bonis asportatis* by Joseph Over and George Packer against Henry Blackstone, Wm. Freeman, and James Freeman, in which the right of property to a team of horses was the subject in dispute.

It appeared that Job Packer had been the owner of the team, and in 1840, being indebted to Long & Blackstone, he sold the team to them and received a credit for the price on their books: they remained in the possession of Job Parker, however, until 1842, when he sold it to the plaintiffs, who are his son-in-law and son. When in their possession, it was taken from them by the defendant Blackstone. The defendants alleged that the sale of 1840 to Long & Blackstone was an absolute unqualified sale to them; Job Packer was examined as a witness on behalf of the plaintiffs, and on his cross-examination testified that when he sold and delivered the team to the plaintiffs he told them that he had made a previous sale to Long & Blackstone. The plaintiffs then proposed to ask the witness whether he had not at the same time told them that the condition of the sale to Long & Blackstone had been complied with by him. The defendant objected to the question, and the court overruled it and sealed an exception.

After the evidence on the part of the plaintiff was given, there did not appear to be any act of trespass proved against James Freeman, one of the defendants, and, on motion of the defendant, the court directed a verdict to be rendered for him by the jury, and he was examined as a witness for his co-defendants; this was also the subject of exception, and the assignment of error.

*Gilmore*, for plaintiff in error.
*How* and *Purviance*, contra.

The opinion of the court was delivered by

KENNEDY, J.—This was an action of trespass brought in the court below by the plaintiffs in error, to recover compensation for two horses taken by the defendants Henry Blackstone and William Freeman. The only controversy between the parties before the court and jury, was as to the right of property in the horses, which was claimed by the plaintiffs on the one side, and by Henry Blackstone, one of the defendants, and a certain D. B. Long, as his partner, on the other. Both parties claimed the horses by purchase from Job Packer, who was admitted to have been the owner of them at a former period. Job Packer was adduced and sworn as a witness on the part of the plaintiffs, and, among other things, testified that previously to his selling the horses to the plaintiffs he had sold them to Long & Blackstone for $175, with the privilege of redeeming them by carrying metal (iron) to Pittsburgh for them; that he never gave up the possession of the horses to them, but continued to use them as he had done before;

[Over v. Blackstone.]

and that when he sold the horses afterwards to the plaintiffs he informed them of the prior sale to Long and Blackstone. The plaintiffs then proposed to ask the witness if, at the same time he told them of the previous sale to Long & Blackstone, he told them also that he had run or carried the metal to Pittsburgh, whereby the horses were redeemed. To this the defendant's counsel objected, and the court overruled the question, whereupon the plaintiffs' counsel excepted to the opinion of the court. This has been assigned for error, and we consider it the only one that the court committed in the trial of the cause. 'It was all-important for the plaintiffs either to show that they had become purchasers of the horses for a valuable consideration, without notice of any kind of the prior sale to Long & Blackstone, or, if apprized of it, that they were also apprized at the same time, from the same source or through the same channel, that the prior sale was defeated and annulled by the performance, by the vendor, of the condition annexed thereto, in the nature of a defeasance. I do not mean that it was incumbent on them to prove the negative, that they had no notice of the prior sale, for upon their proving that they were purchasers for a valuable consideration without any evidence being given, by either side, tending to show that they had notice when they purchased, or were advised, or had knowledge of such circumstances as ought to have induced a prudent man to have inquired into the truth of them first before he purchased; and when such inquiry would, in all probability, have led to a knowledge of the first sale and that it was still in force, it ought and would have been presumed by the court and jury that they had purchased without notice of any kind, either actual or constructive. But as the witness had testified that he told the plaintiffs of the prior sale, the question then presents itself, was it not competent for them to show that they were advised in the same breath, and by the same witness too, that that sale had become annulled and of no validity whatever? The prior sale took place in the autumn of 1840, and the sale to the plaintiffs in April 1842, during all which interim the horses remained and continued in the possession of the vendor, as they had done before, from the time he first became the owner of them; and again, considering that the vendor was the father of one of the plaintiffs and the father-in-law of the other, and that he told them, as it was proposed to be proved, that the prior sale was annulled, was it not sufficient in reason to induce them to believe that he was again the owner of the horses, and as such had a right to sell them? unless, indeed, they had, from a knowledge obtained otherwise, of the fact or circumstances connected with it, good grounds to distrust the truth of what he said in that respect. The fact that the vendor disclosed the prior sale to the plaintiffs, if he at the same time told them it was annulled by his having performed the condition annexed to it, was not sufficient, without other information had been given them of a

VIII.—10　　　　　　　　G

[Over v. Blackstone.]

contrary tendency, to prevent their buying and holding the horses. If Job Packer had not been in the actual possession of the horses when the plaintiffs bought of him, but they had been in the possession of any one who would probably have told them, if inquired at, that they were the property of Long & Blackstone, the plaintiffs would have purchased at their peril, notwithstanding Job Packer might have told them that the first sale was avoided and that he was the owner of the horses. But seeing he was in the actual possession of the horses at the time, and if it be that he told the plaintiffs that the prior sale was avoided, it cannot be imputed to them that they were guilty of negligence in not going further to inquire of Long & Blackstone whether they had any claim under the sale made to them before they purchased, unless it be shown on the part of the defendants, by other evidence, that the plaintiffs, when they bought, were apprized that Long & Blackstone then claimed a right to the horses. This perhaps they may do on another trial of the cause.

Judgment reversed, and a *venire de novo* awarded.