# Wylie's Appeal.

The attorney of W. sold the one-half of a printing establishment and newspaper to C., who at the time of the sale owned the other half. C. placed his name at the head of the paper as sole owner and assumed exclusive possession and control thereof. The sale was made on condition that a part of the purchase-money should be paid in cash and the balance in instalments. Before these instalments were all paid the property was sold at sheriff's sale and bought by M., a creditor of C. No claim to the property was made by W. at the time of the sale. There was some evidence that C. had agreed to rescind the contract of sale, which C..denied. The latter also at the time of the sale informed M. that he owned the property. W. filed a bill in equity to compel·M. to account. *Held*, that it would not lie.

*Held, further*, that under .these circumstances the creditors of C. would be led to believe that C.'s title was absolute and unconditional and that W. was estopped from setting up the conditions of the sale to defeat that title in a contest with *bona fide* creditors. Over *v.* Blackstone, 8 W. & S. 71, followed.

May 8th 1879.    Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Appeal from the decree of the Court of Common Pleas of *York county*: Of May Term 1879, No. 165.    In Equity.

Bill in equity, filed by Mary A. Wylie, administratrix of Stuart A. Wylie, deceased, against A. H. Chase and H. S. McNair.

The bill of Mary A. Wylie, administratrix, &c., of Stuart A. Wylie, deceased, the plaintiff, filed on July 1st 1873, charges that on or about the 7th day of November 1870, the said Stuart A. Wylie, deceased, and said A. H. Chase entered into copartnership, in the business of job printing and publishing the "York Republican" newspaper, at York borough, as equal partners, under the firm name of A. H. Chase & Co.; that no settlement of the accounts of said copartnership had ever been had; that on August 15th 1872, said administratrix sold to said Chase the said decedent's one-half interest in said business and printing establishment, upon conditions set forth in a memorandum receipt as follows:

"Received, Lancaster, Pa., August 15th 1872, of A. H. Chase, of York, Pa., the sum of $100, as payment on the full one-half interest in the printing establishment called the 'York Republican' newspaper and printing office, located at York, Pa., this day sold by Mary A. Wylie, administratrix of Stuart A. Wylie, late of the city of Lancaster, county of Lancaster, Pa., deceased, on the following conditions, to wit: $125 in fifteen days, $125 in thirty days, and $357 in ninety days from date, when the said administratrix will give a bill of sale to the said A. H. Chase for said full one-half interest in said establishment, on condition of assuming three certain notes for $300 each, given by said S. A. Wylie,

[Wylie's Appeal.]

deceased, George Brubaker and John J. Ingram, and payable, one April 1st 1873, one April 1st 1874, and the last April 1st 1875.

GEO. BRUBAKER,

H. C. BRUBAKER,

Attorneys for estate of S. A. Wylie, deceased."

That said Chase failed to comply with the contract of sale, and said sale was rescinded by the parties thereto, and that since then, said Chase has been carrying on the business of said late firm, as surviving partner ; that he has in his possession the joint property and effects of said late firm and has collected outstanding accounts of said firm, and has not accounted for the same ; that upon a true and just settlement of the accounts of said firm, a large balance is due from said Chase to the plaintiff, and praying for an account, the appointment of a receiver, and for a decree of sale of the property and effects of said late partnership and the good-will of the same.

On September 2d 1873, plaintiff moved the court to be allowed to amend her said bill by adding the name of McNair as a party defendant therein, and also by adding to said bill additional paragraphs, setting forth that after the filing and service of said bill, but before appearance had been entered by defendant, or any further proceedings in said case, to wit, on July 12th 1873, three several writs of fieri facias, founded on judgments entered against said Chase, were issued out of the Court of Common Pleas of York county, by virtue of which writs the sheriff levied and sold the interest of said Chase in said " York Republican" printing and job offices to said McNair, on July 27th 1873; that said Chase has become insolvent; that said McNair took possession of said " York Republican" printing and job offices, the subscription lists of said paper, the books and accounts of said office, the materials and all property connected with said business, and availed himself of the good-will thereof; that said McNair never accounted to plaintiff for defendant's interest in said printing and job office and property belonging to said business, and denies all right of the plaintiff to said office and business, or to an account of the same; that the plaintiff is entitled to the same relief against said McNair as she would have been against said Chase, had he not become insolvent, and praying that plaintiff may have the full benefit of the said suit and proceedings thereon against said McNair as she would have had against said Chase, had he not become insolvent, and for an account, &c., against said McNair.

The answer of Chase admitted the existence of the copartnership between himself and said Wylie, deceased ; averred that said copartnership was dissolved by the death of said Wylie, and that letters of administration were granted to the plaintiff; that on or about the 15th of August 1872, Mary A. Wylie, as such administratrix, sold

to said Chase all the right, title, interest and estate of said Stuart A. Wylie in said newspaper business, and that, at the time of said sale, said Chase received from the attorney of said administratrix the memorandum receipt set out in plaintiff's bill; that immediately after said sale he assumed full and exclusive ownership of said business of said late partnership, and all property and effects connected therewith, and treated the same as his own; that he announced in said paper the dissolution of said copartnership, and placed his name at the head of said paper as editor and proprietor, and proceeded to carry on said business as his own, and that he did this with the knowledge and consent of said administratrix. The answer denied that said sale was ever rescinded; alleged that defendant partially complied with the terms of said sale, by paying to said administratrix the sum of $100, the first instalment, and afterwards the sum of $75, part of the second instalment, which sums of money were never repaid; that he obtained an extension of time on the balance of the next instalment, and that he would have complied with the terms of sale, but for the fact that Alexander Patton and Ella, his wife, filed a bill in equity against him, the said Chase, claiming that Ella Patton was the owner, by sale from Stuart A. Wylie, in his lifetime, of all said Wylie's right and interest in said printing establishment, being the same which said administratrix sold to said Chase, after the decease of said Wylie. The answer denied that after the said sale to him by said administratrix he carried on said business as surviving partner, and alleged that he continued said business as his own, and denied that as surviving partner he collected moneys due the firm; alleged that the books, subscription lists and the accounts became his by said sale to him by said administratrix, and denied his liability to account for the same; admitted the issuing of writs of fieri facias and sale by the sheriff to McNair of the right, title, interest and property of said Chase in said printing and newspaper establishment, as set forth in plaintiff's bill, and alleged further that in consideration of a large indebtedness to said McNair, he transferred to him the books of account, subscription list and the money due or to become due thereon; denied that, on a settlement of the partnership accounts of said late firm, anything would be due plaintiff; alleged that he expended large sums of money of his own in said business, and denied all liability to account.

The answer of McNair alleged that he was informed and believed, that Stuart A. Wylie and A. H. Chase entered into the partnership as set forth in plaintiff's bill; that said Wylie died and letters of administration on his estate were granted to plaintiff, as stated in her bill; that he does not know whether settlement of partnership accounts had ever been made; that he is informed and believes, that said administratrix sold to said Chase all the interest, property and right of said Stuart A. Wylie, deceased, in said business, and

that immediately after said sale, said Chase assumed exclusive possession and control of the property, accounts, &c., of said late firm, and used and treated them as his own, and announced in the editorial columns of said newspaper, that he had purchased the interest of said Stuart A. Wylie, in said business, which would thereafter be conducted by said A. H. Chase alone; that in the same issue of said paper, the firm name of " A. H. Chase & Co." was removed from the head of said paper, and the name of A. H. Chase substituted, which last name continued until the time of the sheriff's sale, all which was done by the knowledge and consent of said administratrix; that he is informed, and believes, that Chase failed to make the payments called for in said memorandum receipt, because of the bill in equity filed by Patton and wife, as set forth in said answer of Chase; that he had frequently been informed, by Chase, before and after said sheriff's sale, and believed, that said sale to Chase, by said administratrix, had not been rescinded; that Chase had paid considerable money, on account of said sale, which said money had never been returned; that Chase never, after said sale, carried on said business as surviving partner of said late firm, but conducted the same as the sole owner; denied any knowledge, as to whether Chase collected money due the late firm at the time of the death of Wylie, but alleges that Chase became the owner of all debts due the firm, at the time of the sale to him by said administratrix; admitted that Chase did not sell the joint property of said late firm, or settle the partnership accounts, but continued to use the same, as his own, up to the time of the sheriff's sale; admitted the issuing of the writs of fi. fa. and sheriff's sale as alleged in plaintiff's bill; that after said sale he used the said property and effects of said late firm, and treated the books and accounts thereof as his own, for the reason that he had purchased the said property and effects at said sheriff's sale, and acquired the books and accounts from Chase, by assignment dated August 10th 1873; admitted that he has never accounted for Wylie's interest in said late copartnership, for the above reasons set forth in said answer, and denied the right of plaintiff to an account from him, or to the relief prayed for in her bill.

The cause was heard on bill, answers and the evidence taken before an examiner. The court, Fisher, P. J., dismissed the bill as to McNair, but decreed that Chase should file an account of his receipts and expenditures on account of the firm of Chase & Wylie, from the date of its commencement until the date of the filing of the bill in this case.

The administratrix appealed from this decree, alleging that the court erred in dismissing the bill against McNair, in refusing a decree that he should account, and in refusing to order a sale of the partnership business and effects.

[Wylie's Appeal.]

*George Brubaker, H. C. Brubaker* and *Cochran & Hay*, for appellants.—The record here does not present a case of a sale and delivery of the property by the plaintiff to the defendant. The answers do not admit,· and there is nothing in the case to show a delivery of the property by plaintiff to Chase. He did not come into possession in pursuance of the agreement. Nor did he have possession by reason of any act of the plaintiff.. At the time· of the dissolution of the partnership by the death of Wylie, Chase was in possession as the surviving partner. He continued to remain in possession. The law placed him in possession, and having placed him there, the plaintiff was not responsible: Myers *v.* Harvey, 2 P. & W. 478.

There was a condition unperformed, and until performance the property did not vest in Chase: 2 Kent's Com., sect. 497; Barrett *v.* Pritchard, 2 Pick. 512; Whitwell *v.* Vincent, 4 Pick. 449; Strong *v.* Taylor, 2 Hill 326; Hirschorn *v.* Canney, 98 Mass. 149; Whitney *v.* Eaton, 15 Gray 225; Russell *v.* Minor, 22 Wend. 659.

McNair had knowledge of the agreement between plaintiff and Chase, and therefore does not stand on the favored ground of a bona fide purchaser for value, without notice. Plaintiff cannot be affected by the acts or declarations of Chase. McNair, by his purchase at the sheriff's sale, rendered himself liable to account as prayed for in the bill: Taylor *v.* Fields, 4 Vesey 396: Lindley on Partnership 558; 1 Story Equity Jurisprudence, sect. 667.

*James W. Latimer*, for appellees.—A contract of sale immediately divests the vendor of his property and vests it in the vendee: Leedom *v.* Philips, 1 Yeates 527; Simmons *v.* Swift, 5 B. & C. 862; Dixon *v.* Yates, 5 B. & Ad. 313, 340; Welsh *v.* Bell, 8 Casey 13; Martin *v.* Adams, 104 Mass. 262.. To retain a lien on personal property as against the creditors of the vendee, the vendor must retain either the exclusive or a joint possession with the *indicia* of ownership: Lehigh Co. *v.* Field, 8 W. & S. 242; Rose *v.* Story, 1 Barr 190; Martin *v.* Mathiot, 14 S. & R. 214; Haak *v.* Linderman, 14 P. F. Smith 499; Bowen et al. *v.* Burk, 1 Harris 146; Backentoss *v.* Speicher, 7 Casey 324; Jenkins *v.* Eichelberger, 4 Watts 121; Smyth *v.* Craig, 3 W. & S. 14. Where the property at the time of the sale is in the possession and control of the vendee, no formal act of delivery is necessary: Martin *v.* Adams, 104 Mass. 262; Warden *v.* Marshall, 99 Mass. 305. As against McNair there is no ground of equity jurisdiction. No partnership relation ever existed. A bill in equity will lie for an account only in case of partnership, or where action of *account render* will lie at common law: Purd. Dig. 591, pl. 3, 4. Account render will only lie where there is *privity of contract:* Persch *v.* Quiggle, 7 P. F. Smith 247; Shriver *v.* Nimick,

5 Wright 80. There was no privity of contract between McNair and the plaintiff.

Mr. Justice GORDON delivered the opinion of the court, June 2d 1879.

Chase, as survivor of the partnership, composed of himself and Stuart A. Wylie, was entitled to have the possession of the assets and property of the company only for the purposes of settlement and liquidation. His possession was that of the firm; he had no right to put that property to any personal use, neither could he have maintained an action for it in his own name. In other words, the right of property and right of possession were in him, only as the representative of the previous partnership, which had been dissolved by the death of Wylie. The sheriff, however, made his levy upon this property as the property of A. H. Chase, and as such it was sold, and bought in by McNair. Furthermore, McNair having so bought, took possession of this property, and has since continued to claim, use and dispose of it as his own. Let us suppose that there had been no sale by Wylie's administratrix to Chase; that, at the time of the levy and sale, this printing material belonged to the partnership and that it was in Chase's possession only as a surviving member of that partnership; what then follows? Plainly this, that both the sheriff and McNair were trespassers and, as such, responsible to the representative of the firm for the price of the goods. But this supposed status of the property, in controversy, is just what the plaintiff's bill claims as its real status, and such being the case, it passes our comprehension to know how McNair can be treated as an agent or trustee of the firm, and so brought within the reach of equity process. Surely if he is to account at all it is in an action of trespass, and not in a suit in equity.

But, again, when the sheriff made his levy upon the controverted property, Chase was found in the exclusive possession of it, claiming and using it as his own separate estate, and as such, it was sold by the sheriff and bought in by McNair. It becomes, then, important to inquire how this claim, by Chase, of exclusive right and possession arose. The answer is, by the sale to him by the administratrix of Wylie's estate, as set forth in the paper of August 15th 1872. Now we need not stop to inquire whether that sale was conditional or unconditional, for this much is certain that, by virtue of it, the possession of the property passed to Chase. He thereafter used it for his own purposes, for the printing of his own paper, a use which he could not legally have made of the property but by virtue of the contract of sale. It is said, however, that the plaintiff did not know of this use by Chase; we can only answer, if she did not have knowledge of this fact, it was because she was not properly informed by her own attorney, who negotiated the sale on

[Wylie's Appeal.]

her behalf, and who has since acted as her agent. He knew that Chase was continuing the publication of the paper, and he knew, or ought to have known, that that publication could not be on account of a partnership which had been dissolved by Wylie's death. We must take it then, that the possession of the property passed by the agreement to Chase, and that he had, at least, a title defeasable on the non-performance of the conditions of the contract. But a conditional sale, such as this, where the possession of the property is permitted to pass to the vendee, not being dependent upon, or collateral to, a contract of bailment, is fraudulent and void as to creditors : Martin *v.* Mathiot, 14 S. & R. 214 ; Rose *v.* Story, 1 Barr 190 ; Haak *v.* Linderman, 14 P. F. Smith 499.

It is alleged, however, that McNair by his answer admits that he had notice of the conditions under which Chase held this property. It is true he admits the fact, as set forth in the bill, that Chase's claim was founded upon the paper of August 15th 1872, but he states, in connection with this admission, that, with the full knowledge and consent of the plaintiff, Chase assumed the entire and exclusive control over the property, and held himself out to the world as the sole owner thereof. Taking this as true, and we have the parties themselves, by their acts, putting such a construction on a contract, which, at best, is of doubtful import, as would lead creditors to believe that Chase's title was absolute and unconditional. Such being the case, the vendor would be estopped from setting up the conditions to defeat that title, in a contest with bona fide creditors. Beside this, if we pass to the testimony, we find McNair declaring, " My means of information that Chase owned the ' York Republican' at the time of the sheriff's sale were, that Chase himself told me so ; he told me he had purchased Stuart A. Wylie's interest." Now as Chase was in the exclusive possession of the property, with the assent of the plaintiff, McNair had a right to assume that these declarations were true, and to act upon them, and he was not bound to inquire further. Authority for this conclusion will be found in the case of Over *v.* Blackstone, 8 W. & S. 71. That case, like the present, was one involving a conditional sale. One Job Parker had sold the horses in controversy, previously to his sale to the plaintiffs, to Long & Blackstone, but continued in the possession of them under an arrangement that he was to have the privilege of redeeming them by carrying metal for Long & Blackstone, to Pittsburgh. It was held, that as Parker was in possession of the property, the plaintiffs were justified in acting upon his declaration to them, that the contract with Long & Blackstone had been avoided, and that they were not bound to make further inquiry.

         The appeal is dismissed, decree affirmed, and ordered that the costs be paid by appellant.