In re MORRIS.

(District Court, M. D. Pennsylvania. July 8, 1907.)

No. 985, in Bankruptcy.

1. SALES—CONDITIONAL SALES DISTINGUISHED FROM BAILMENT.

Where a contract, evidenced by a writing purporting to be a lease or bailment of the furniture of a hotel, provided for a delivery of the goods to the bailee on the payment of a certain sum, and for progressively increasing monthly installments extending over a period of five years, with interest, which the bailee undertook to pay, on completion of which payments he was to become the owner, without more, there being no term for which the goods were leased, nor any stipulation for their return at the end, and the amount to be paid for their use being the full value of the goods, the bailor, upon a default, being given the right to retain all payments made, this, under the law of Pennsylvania, was a conditional sale, notwithstanding the fact that no title, as it is declared, was to pass, but was to be retained by the bailor until the end.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, §§ 1324, 1325.]

2. SAME—BANKRUPTCY—RIGHTS OF TRUSTEE REPRESENTING CREDITORS.

Whatever it may be called, and however hedged about with conditions, where there is a positive engagement on the part of the so-called bailee or lessee to pay a stipulated sum, upon which payment, without more, the goods are to be his, and a bill of sale to be executed therefor, this is nothing but a sale, and not a bailment, which the trustee in bankruptcy, representing creditors, may assert.

3. FRAUD—UNUSUAL LITTLE THINGS AS BADGES OF.
     Semble, that the character of a transaction is often betrayed by the unusual little things which creep in, "the clausulæ inconsuetæ pointed to in Twyne's Case as the sure badges of that which they are intended to hide."
     [Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, §§ 1324, 1325.]

In Bankruptcy. Petition of Barbara Boyle for the reclamation of certain property.

C. A. Van Wormer, for petitioner.

J. C. Ingham, for trustee.

ARCHBALD, District Judge. It is difficult to give to a written instrument a character which the transaction, which it purports to represent, does not inherently bear. While, therefore, it is easy enough to make an agreement speak as a lease or a bailment, where that was what was actually in the mind of the parties, where the fact is that the one desires to sell and the other to buy, the attempt to have the arrangement masquerade in writing as something else is very likely to fail. There are apt terms and provisions for the one, which are inapt and unadaptable for the other, and the result is a nondescript, the different parts of which defeat each other and make manifest the real purpose in view. And this is also often betrayed by the unusual little things which creep in, "the clausulæ inconsuetæ pointed to in Twyne's Case, 3 Rep. 80, as the sure badges of that which they are intended to hide." Taylor v. Taylor, 8 How. 183, 205, 12 L. Ed. 1040; In re Baxter (C. C. A.) 152 Fed. 137, 141. As experience teaches, such instruments are prompted by the desire on the part of the owner of the goods to have the benefit of a sale while escaping its responsibilities, retaining a hold on them so as to be secure of the price, without subjecting them to the claims of creditors by reason of having parted with the possession, although giving credit to the one obtaining them, in their eyes, as the apparent owner thereby. This is not the policy of the law, and there is no occasion for the courts to be astute in helping to get around it. On the contrary, the result cannot but be healthful where attempted evasions of it are brought to nought. This subject has been so often considered in this court that there is very little left to be said. In re Butterwick (D. C.) 12 Am. Bankr. Rep. 536, 131 Fed. 371; In re Tice (D. C.) 15 Am. Bankr. Rep. 97, 139 Fed. 52; In re Poore (D. C.) Id. 174, 139 Fed. 862; In re Wells (D. C.) Id. 419, 140 Fed. 752; In re Heckathorn (D. C.) 16 Am. Bankr. Rep. 467, 144 Fed. 499. The question is one of local law in which the decisions of the state courts control. Those in Pennsylvania are not all so clear or consistent as they might be. In re Tice (D. C.) 15 Am. Bankr. Rep. 97, 139 Fed. 52. And there are some no doubt in which the writing has been held to constitute a lease or bailment, which approach somewhat closely to the case in hand. Stiles v. Seaton, 200 Pa. 114, 49 Atl. 774; Miller v. Douglas, 32 Pa. Sup. Ct. 158. But as was observed in one of the latest, and as is applicable here, there is nothing about the agreement relied upon that suggests a bailment, except the use of certain terms and expressions which are evidently

employed to give another name to that which was meant to be a conditional sale. Kelly Roller Co. v. Spyker, 215 Pa. 332, 64 Atl. 546. There is no evidence in the present instance, outside of the writing, as to the nature of the transaction out of which it grew, and it is therefore to be judged solely by the terms of that instrument. But, regardless of some of these, if the effect was to give title to the bankrupt upon payment of a stipulated sum, it was a sale, whatever else it may have been denominated at the time. In re Tice (D. C.) 15 Am. Bankr. Rep. 97, 139 Fed. 52.

The agreement is a somewhat verbose affair, and starts out with styling one party the bailor and the other the bailee, reciting that the one delivers to the other, "on hire and on the terms and conditions" thereinafter named, the goods and chattels enumerated in the schedules attached. These goods constituted the furniture in a certain hotel, known as the "Sinclair House," at Pittston, Pa., of which the bankrupt took a five-year lease on the same day. And "for the use and hire" of them he agreed to pay the sum of $5,500, of which $1,500 was to be paid down on the execution of the agreement, June 20, 1905; $50 on April 1, 1906, and the same amount monthly thereafter until $600 had been paid; $75 on April 1, 1907, and the same amount monthly until $900 had been paid; and $104.16 on April 1, 1908, and the same amount monthly until $2,500 had been paid, together with interest, at the rate of 6 per cent. per annum, payable month by month, to be computed on the balance due on the date of the agreement up to April 1, 1906, and thereafter from April 1st to April 1st, on the unpaid balance, on each of such successive dates, no allowance or deductions to be made therefrom on account of the monthly installments of principal provided for meanwhile. In case of default in any such payments, the so-called bailor was to have the right to repossess herself of the goods and chattels without notice or other proceeding, except that she might sue out a writ of replevin; the so-called bailee agreeing to peaceably and promptly deliver them up to the bailor, who was to retain all money that had been paid. It was also expressly stipulated that, until the payments provided for had been made and a bill of sale given, the right of property should remain in the bailor, the bailee to pay the insurance thereon. The bailee further agreed to protect the goods from needless use and injury, and not to remove them from the hotel nor part with their custody in any way without the written consent of the bailor, any attempt of the bailee to remove them working an immediate forfeiture thereof. Judgment was also confessed by the bailee for $4,000 (the balance due after making the down payment) with interest and costs, and a 5 per cent. attorney's commission, waiving inquisition and exemption. And, upon the failure of the bailee to comply with the terms and conditions of the agreement, the entire balance unpaid was to become immediately due and payable, on affidavit of which judgment might be entered therefor. Finally, upon the faithful performance of all the covenants of the agreement, the bailor undertook to execute a bill of sale transferring to the bailee the ownership of the goods involved.

Notwithstanding the apparent stringency of this instrument, and the multitude of provisions by which its real purpose is overlaid, if not

obscured, it will be found upon examination to be subject to all the infirmities to which reference has been made. Like so many others, the attempt is to have it pose as a bailment, while getting the benefit of a sale, which is only thinly disguised. As a lease, if that be claimed for it, there is no term; or, as a letting for hire, if there be any distinction, there is no provision for a return at the end. These may not be essential. Stiles v. Seaton, 200 Pa. 114, 49 Atl. 774. But they certainly have weight. Kelly Roller Co. v. Spyker, 215 Pa. 333, 64 Atl. 546. The amount to be paid also is the full value of the goods, which is out of all character, if for their mere use. And what explanation is there of the progressively increasing installments provided for, and the peculiar, not to say excessive, computation of interest, upon any such idea? But the determinative thing, from which there is no escape, is that, not only is there a positive engagement on the part of the so-called bailee to pay the sum stipulated, with interest, but upon such payment, without more, the goods without qualification are to be his. Call it what you will, and hedge it about with conditions as you may, this is nothing but an agreement of sale. In re Tice (D. C.) 15 Am. Bankr. Rep. 97, 139 Fed. 52. From the moment the writing was executed, the one party was obligated for the price, and the other upon its payment was bound to transfer the title. There was to be a bill of sale, it is true, but that was a mere form, the bailor having agreed to give it and possession having been parted with at the time. Bearing this character from the start, it does not matter where we break in. Nor is it of any consequence that title was not to pass, as it is declared, but was to be retained by the bailor until all payments had been made. A condition of that kind may be good between the parties, but as to creditors it is of no avail. And why was it necessary to so stipulate, if there was a bailment beyond doubt? Or why, it may be added, was there occasion to provide, as is done, that all money should be retained by the bailor upon the termination of the agreement by default, if it was really for the hire of the goods? But without stopping over this, taking the writing as it stands, there is nothing to be made out of it but a conditional sale, vesting title in the bankrupt, which the trustee representing creditors has the right to assert.

The petition is dismissed.