## In re RINKER.

(District Court, M. D. Pennsylvania. November 26, 1909.)

### No. 1,472, in Bankruptcy.

1. BANKRUPTCY (§ 140*)—PROPERTY PASSING TO TRUSTEE—PROPERTY HELD UNDER CONTRACT—LEASE OR CONDITIONAL SALE.

An instrument under which a cash register was delivered by the maker consisted of a printed form, with blanks, some of which were filled in and others not. It purported to be a lease, and bound the lessee to give his note, payable in installments, for the declared value of the register, less certain payments made and credits given, to secure the payment of rental to the same amount. It also provided that at the expiration of the lease, if its terms had been complied with, he should surrender the register in good condition and receive back the amount paid, with the option of purchasing the register for such amount; but no term for the lease was designated, the provision therefor in the form being left blank. Held that, without such term being fixed, the instrument was not a lease, and that the delivery of the register thereunder was not a bailment, but a conditional sale, which under the law of Pennsylvania was fraudulent as against creditors, and that the seller could not reclaim the property from the purchaser's trustee in bankruptcy; the property being under levy on execution, which was continued for the benefit of the estate.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 140.*]

2. BANKRUPTCY (§ 140*)—PROPERTY PASSING TO TRUSTEE—ATTEMPT BY BANKRUPT TO RECONVEY PROPERTY TO SELLER.

A sale of property under which it has been delivered and partial payments made on the price cannot be changed into a lease, after the purchaser has become insolvent, so as to revest title in the seller as against the purchaser's creditors in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 140.*]

3. BANKRUPTCY (§ 140*)—PROPERTY PASSING TO TRUSTEE—PROPERTY HELD UNDER CONTRACT—LEASE OR CONDITIONAL SALE.

A soda water apparatus was delivered to bankrupt under a contract or order which stated that it was "sold" by an agent. It further stated the "price" of the apparatus, that a credit was to be allowed the bankrupt thereon of a certain sum on account of a secondhand soda fountain, and then provided that the apparatus was leased to him for a term of three years at a rental aggregating the remainder of the price, to be paid monthly. At the end of the lease he was to return the apparatus or to have the option to purchase it for $1. Held, that the transaction was a conditional sale, and, being under execution at the time, that the seller under the law of Pennsylvania could not reclaim the property from the bankrupt's trustee.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 140.*]

4. SALES (§ 5*) — LEASE OR CONDITIONAL SALE — WRITTEN TERMS OF SALE ON PRINTED BLANK.

Where an order for certain specified ice cream apparatus was given, with distinct prices named for each piece, on 30, 60, and 90 days' credit, this cannot be regarded as other than a sale, which is not affected by the fact that it is written upon a blank form in which the party nominally agrees to lease the property for a specified term of three months at a total rent equal to the net price of the property.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 12; Dec. Dig. § 5.*]

In the matter of Harry Rinker, bankrupt. On petitions to reclaim property. Petitions dismissed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

C. C. Yetter and W. H. Rhawn, for claimants.
Clinton Herring, A. W. Duy, and John G. Harman, opposed.

ARCHBALD, District Judge. These are petitions by different parties asking for the reclamation of certain articles of personal property in the possession of the bankrupt and comprising practically the whole of his estate, which are alleged to have been held by him on bailment. This property had all been levied on by the sheriff on execution against the bankrupt, before his bankruptcy, and the levy was directed by the court to be preserved for the benefit of the estate, the trustee being subrogated to the rights of the execution creditor, so that, if held on conditional sale, as contended by the trustee, instead of on bailment, the property is to be treated as belonging to the bankrupt; such sales in Pennsylvania being constructively fraudulent as to creditors.

1. The first petition is that with respect to the cash register. This register was ordered by the bankrupt September 23, 1908, at the solicitation of an agent of the National Cash Register Company, the petitioners, and the price—or, as it was expressed in the order, the value—was to be $620; it being arranged that the bankrupt should make a certain payment down and receive a credit of $105 for an old machine which he had on hand, which was to be taken in exchange, the rest to be taken care of in certain monthly installments. After making the bargain, however, he repented of it, doubting his ability to meet the deferred payments, and he tried to get out of it in consequence, but was not allowed to. A few weeks later the cash register came, and after some demur was accepted by him, a cash payment of $40 being made October 10, 1908, which, with the credit allowed for the old machine, raised the amount to $145, leaving a balance of $475. Other payments were subsequently made to the amount of $60, but, not having been kept up, as called for by the agreement, on April 30, 1909, it was canceled, and a new one entered into, by which it was held at the time of the alias execution. It may be conceded that the first arrangement constituted a bailment, it having been so decided, under the local law, with regard to a contract in all respects similar, in National Cash Register Co. v. Shurber, 41 Pa. Super. Ct. 187; and so long as that arrangement continued the property, therefore, belonged to the petitioners. But this is denied as to the one which superseded it, which is asserted and relied on in these proceedings, and the question, therefore, is as to its character. The same printed form is used in both, but there are omissions in the second which are claimed to materially modify it.

As will be seen by the contract, a copy of which is given in the margin,[1] the value of the property was fixed as before at $620, on which

[1] City, Bloomsburg. County, Columbia, Pa.
Date, 4/30, 1909.

The National Cash Register Co., Dayton, Ohio:

Please ship to the undersigned at No. ...... Main Street, Bloomsburg City. Mailing Address, Main Street, Bloomsburg City, as soon as possible, one of your No. 562-6 F. E. Oak Registers, valued at $620.00. Case to be O. Denominations of keys to be Special Register #652966 Delivered. This register to be used on the ...... counter confg soda business, and we agree to lease it from you for the term of ...... months, for the rental of $415.00. We

$205 was credited, leaving $415, at which figure as rental the bankrupt agreed to lease it. No term, however, was designated, the provision for this being left blank, and there being no other means by which to determine it. And the mere agreement to lease, and the calling of this amount rental, did not necessarily give any such character to the arrangement. Farquhar v. McAlevy, 142 Pa. 233, 21 Atl. 811, 24 Am. St. Rep. 497; Morgan Electric Co. v. Brown, 193 Pa. 351, 44 Atl. 459; Kelly Road Roller Co. v. Spyker, 215 Pa. 332, 64 Atl. 546. A down payment of $30 was also called for, and evidently made, which reduced to $385 the amount for which the bankrupt was to be liable, and a promissory note was given for this and made payable in twelve monthly installments, eleven at $30 each and one of $55. This, without more, would make out a sale, a value or price being put on the property and a definite undertaking given for its payment; and the only question is how far this is controlled by the other provisions.

No term being fixed, and there being no way of arriving at it otherwise, the agreement to lease was absolutely nugatory, and with it fell whatever depended upon it. It is true that there may be a bailment without provision for a term. Stiles v. Seaton, 200 Pa. 114, 49 Atl. 774. But there certainly can be no lease unless a term is provided for.

agree to give you our promissory note for $385.00, payable in 12 monthly installments, 11 of $30 each, and 1 of $55, as collateral security for the payment of said rental.

We further agree to pay you $30 forthwith, and $...... upon arrival of register, as partial security for the fulfillment of this agreement. At the expiration of this lease, we agree to surrender to you the said cash register in good condition, you to return to us the amount deposited with you as security as hereinbefore mentioned, provided the terms of this lease have been complied with.

$105.00 allowed 38¼—459318—
100.00 paid allowed.

We are to have the option, after the expiration of this lease and after the surrender of said register, to purchase the same upon the payment to you of the amount deposited as partial security.

It is expressly understood and agreed that in default of the payment of any installment of rental, or upon the issuing of any attachment, execution, distress for rent or like process against us, or in the event of our becoming insolvent, or having a petition in bankruptcy filed by or against us, the full amount of rent for the balance of said term shall become due and payable, and you may immediately take possession of said register.

You are authorized to date above mentioned note at such time as you may elect and to insert such date either prior to or after the execution of such note.

In case of refusal on our part to receive said register, or having received it, default is made in the payments above provided, we do hereby authorize and empower any attorney of any court of record in this state, or elsewhere, to appear for and enter judgment against us and to assess damages in the case of refusal to receive said register, in an amount equal to forty per cent. of the value of said register as herein expressed, which amount is considered and agreed upon by both parties hereto as proper liquidated damages for such refusal, and in the case of default in payment of any installment of rental, in an amount equal to the whole or any part unpaid under this agreement, whether the same shall be due and payable or not; and in either instance with or without declaration, with an attorney's fee of fifteen per cent. with costs, release of errors, and with waiver of right to inquisition and appeal and of the benefit of all appraisement, stay and exemption laws of this state. All claims of representation and verbal agreement not herein embodied are

And with this eliminated, what is there on which a bailment of any kind can be predicated? It is said that at the expiration of the arrangement it is agreed that the cash register shall be surrendered in good condition, upon which the amount deposited as security for the fulfillment of the agreement is to be returned to the bankrupt, or, at his option, may be applied in the purchase of the property, the amount at which it is held being thus taken care of. But "at the expiration of this lease" is the expression in the contract, and, there being no lease, there is nothing to fulfill this condition. It is true that upon the nonpayment of the installments called for, as well as the happening of certain other adverse contingencies, there is a resulting forfeiture. But it is manifest that this is not the "expiration" which is so referred to, which contemplates the completion of the contract in due course, after full compliance with its terms, and not the abrogation of it because of a breach. And neither is it the complete payment of the installments provided for, the only other contingency by which the arrangement is to come to an end; it not being assumable that, having paid in this way, with the other credits given, the full value of the property, the bankrupt, in the same breath, was required to surrender it. There being nothing, therefore, on which the provision for a surrender can be made opera-

also waived. Should the register get out of order, from ordinary use, any time within two years from the date of shipment, you are quickly to repair same, gratis, the undersigned paying transportation charges to and from the factory or nearest agency capable of making the necessary repairs; or if repairs are desired made where the register is located, the undersigned to pay the traveling expenses of repairman from and back to your factory or nearest agency capable of making the necessary repairs. Any repairs made without your consent, or contrary to your directions or those of your representatives, will be at the expense and risk of the undersigned. Transportation charges from Dayton, Ohio, to destination, and all taxes and assessments on register, to be paid by the undersigned, he also to bear whatever cost or expense, if any, incurred in installing or setting up said register.

    Accepted May 11–09 ...... 190 ...... O. K. G. H. C.
       The National Cash Register Co.

By Edw. H. Peiffer.                                                    Filed
    Harry Rinker.                                                  May
                                                          13.

                (Sign here) Harry Rinker,
                        By ............

[Indorsement on back of foregoing contract:]

Draw through M. A. Kister.
Bank of Williamsport, Pa.
Ship by  Freight.
         Express.
This order filled with Register No. 652966 Delivered.
Ship Exchange Register to ......
    This order cancels order dated Sept. 23/09, for this register. Credit amt. paid to apply as part cash payment on this order.
                        Cash, 30.00.
                        Note blank dated ......
                        Date 5/3.  Time Rec'd 4 p. m.
                        Customer Check No.
                        Section 4 Per J.
M. A. Kister, Williamsport, Pa., Sales Agent.
M. A. Kister,                  Closing Salesman.
M. A. Kister,                  Salesman Credited.

tive, it cannot be relied on to make out a bailment. The fact is that, in using the blank form of contract employed by this company, and failing to fill out essential parts of it, a nondescript result has been produced, which it is difficult to characterize. As possibly explaining the lapses in it, it may be that the company was content to relax, in this way, the stringency of its ordinary arrangement, over one-third of the price having been paid, and to rely on the security for payment of the rest, which is otherwise provided for. But, however that may be, taking it as it reads, it is not a lease, nor any other kind of a bailment. The most that can be made out of it is that it is a sale upon condition, the property having been parted with to the bankrupt upon certain terms, upon compliance with which he was to be the owner, and it cannot, therefore, as against creditors, be reclaimed by the petitioners.

2. Upon no possible basis can the claim of Yohn Bros. be sustained to the electric or penny-in-the-slot piano. This was sold outright and beyond question in July, 1907, by the claimants to the bankrupt for $634.50—that is to say, $600 for the piano itself, and $34.50 for the slot boxes—on which $34.50 was paid August 15, 1907, and a note for $600 given for the balance, which was renewed from time to time in decreasing amounts, until June 25, 1909, when it had been reduced to $447.50, when, the bankrupt having got into financial difficulty, an effort was made to recall what had been done, by taking from him a so-called lease, on which $15 was to be paid monthly. Assuming that the instrument which was so drawn up was in fact a lease, as it clearly was not, it was altogether too late to modify the existing arrangement. It may have been good as between the parties; but the bankrupt was not only seriously indebted, but was actually under levy on execution in the hands of the sheriff; and the title by which he held the property could not be juggled with in the face of this, so as to have it possibly stand as a bailment. In re Poore (D. C.) 15 Am. Bankr. R. 409, 140 Fed. 786. This is too plain for argument, and without stopping further over it, the petition must be dismissed.

3. The soda fountain is claimed by the Liquid Carbonic Company, and was delivered to the bankrupt July 1, 1908, under a writing, a copy of which appears in the margin.[2] Like the one in the case of the

[2] Sold by Hawkins.     Town, Bloomsburg. County, Columbia. State, Penna. No. East Main St. Street. July 1st, 1908.
         The Liquid Carbonic Co., Chicago, Ill.:—Please ship to us at the above address, on or about ...... 190.., the following Soda-Water Apparatus and other goods:
Top:    Name and Length, Kentucky 12'.   Finish, "B."   Height, Reg.   Fixtures ....... Display Stand, none.
      Remarks ........................................................
Base:   No., Ref.   Finish, B.   Length, 12'.   Height, Reg.   Location Port. Fountains ...... Basing ......
      Remarks ........................................................
Dispensing Counter:   No. and Name, White Italian.   Finish ...... Height, Reg.   Width, Reg.   Basing ...... Front Length, 14 ft.   Return Length, X.   Position Right or Left, X.
      Remarks:   With four Onyx Pilasters with Bronze capitals & Corbels. Always accompany contract with sketch of counter and base describing return fully.
Base Slab, White Italian to fit base.
Dispensing Slabs, White Italian to fit Counter.

cash register, supra, this started out with an order with elaborate specifications, giving the type of soda fountain desired, and describing its appointments; the paper on its face at the same time stating that it is "sold by Hawkins" (an agent); the "price" being given at $2,227.-75, on which there is an allowance of $498.50 for a secondhand apparatus, turned over by the bankrupt, making the "net price," as it is said, $1,729.25. This the bankrupt agrees to lease from the claimants for the term of 36 months, for a total rental of $1,729.25, its full net value, a sight draft for $329.25 to be honored on receipt of the goods, the balance to be paid in monthly installments of $40. At the end of the term the property is to be surrendered by the bankrupt in good con-

Draft Stands: No. and Name, 428.2 Delvan Draft Stand Voltage for Fixtures ......
    Congress, Deep Rock, Ginger Ale, Lithia, Kissingin, Seltzer, Vichy, Waukesha.
2 Soda Drafts. 2 Mineral Drafts.
1 Plain Water Drafts. 14 No. Syrup Pumps and Jars.

Check those wanted.

| Apricot | Cherry | Dr. Pepper | Orange | Sherbet |
| Blackberry | Coca Cola | Ginger · | Peach | Sarsaparilla |
| Banana | Coffee | Grape Kola | Pine-apple | Strawberry |
| Cream | Catawba | Lemon | Plain | Vanilla |
| Claret | Cream de Menthe | Nectar | Raspberry | Wild Cherry |
| Chocolate | Don't Care | Maple | Root Beer. | Wintergreen |

Leaders, Number and Length ...... Connected ...... Y ...... Two Way-cock ......
Cooler Chambers: No., Type and Construction, Type "D."
    Syrup Bottle }
    Flavors. } ......
Syrup Enclosures: No., Type and Construction, Type, "D" Marble.
Workboard: Material, Facing—Describe fully. In two sections. One 3'8" G. S. Marble Faced. Special Features and Remarks. With Special Overflow & Strainer. Dipper Well, Refuse Chute.

Ice Cream Cabinets: No., Size and Construction. One 2'7" G. S. Marble Faced with overflow. Slide—Drawer. Remarks: One Marble I. C. Cabinet to hold 2-5 Gal. Cans. One marble I. C. Cabinets to hold 1-5 Gal. N. P. Towel Rail on Workboard. Complete outfit as shown in Pittsburg Show room.

Prices:
Total Consideration.. $2227.75
Less allowance for }
2nd hand apparatus } 498.50

Net Price........ $1729.25

Description of Second-Hand Apparatus to be Taken in Exchange: Mfr., Liquid. Name of Apparatus, 2 Nantuckets. Variety Marble ...... No. Syrups ...... No. Drafts ......

The above second-hand apparatus is free from all liens; and we agree, at our own expense, to put the same in as good condition as possible, and pack and ship as directed by the said The Liquid Carbonic Company; this being in addition to the money payments below mentioned.

All of which we agree to lease from you for the term of Thirty-six months, for a total rental of Seventeen hundred twenty-nine $^{25}/_{100}$ Dollars ($1,729.25), to wit: $...... on the signing hereof, and upon receipt or tender of goods, or bill of lading for the same, I will honor your sight draft, or other demand for $329.25; and the balance of said rental I agree to pay in monthly installments, viz: $40.00 per month, for the months of April, May, June, July, August and September. $40.00 per month, for the months of October, November, December, January, February and

Accepted
The Liquid Carbonic Company,
    By C. Haumfuss, Secretary.

March, of each year until the expiration of said term. Delivery to be made f. o. b. cars, Chicago, Ill. We also agree upon receipt or tender of goods or

dition, but may be purchased by him at his option upon payment of the further sum of $1, on receipt of which a bill of sale is to be given, until which time no title is to be taken as passing. The bankrupt further agrees not to sell the property or remove it from the place where it is set up; and in default of payment, or on a breach of any of the conditions, the whole rent is to become due, and the claimants are to have the right to enter and remove the property without the aid of legal process.

The transaction so consummated, while thinly disguised as a lease, with a definite term and a specified monthly rental, was so evidently a sale, put in this form in order to make sure of the purchase money, that it is hardly worth while to argue it. Not only is the soda fountain declared to have been "sold" by the agent named, but the price is specified, and a credit allowed by the old machine for nearly one-fourth of

bill of lading for the same, to execute and deliver promissory notes, as collateral security for said deferred payments of rental bearing interest from date at the rate of six per cent. per annum. At the expiration of the term of this lease we agree to surrender to you all the property herein described, in good condition, or, at our option, to purchase the same upon the further payment to you of one dollar; upon which payment you are to execute and deliver to us a bill of sale covering said property. No title to said property to vest in us, except as lessee thereof, until the execution of such bill of sale. We will insure said property promptly, and keep the same fully insured, at our own expense, loss, if any, payable to you, as your interest may appear; and will forward to you the policies covering same. If we delay insuring, you may at your option take out insurance, and we will at once pay the premium. We will not sell said property nor remove the same from the above address without your consent.

Should we fail to make said deposit, or to execute said notes, or default in the payment of the rent for any month when the same falls due, or sell or attempt to sell, or remove said property without your consent, or fail to comply with the above insurance provisions, then, or in either of said cases, the full amount of rent for balance of term shall forthwith become due and payable, anything in said notes to the contrary notwithstanding. Should any such default be made, you, or your agent or attorney, may, without process of law, enter our premises, and take possession of and remove said property. If suit shall be brought for collection of any amount which may become due under this contract, the benefit of the exemption laws is hereby waived.

There are no conditions or agreements with your salesman, except those herein stated, and no claim will be made by us for any goods not specified herein. This order is subject to the approval of The Liquid Carbonic Company. It is understood and agreed that The Liquid Carbonic Company is not responsible for delay or prevention caused by acts of God, the public enemy, strikes or other causes beyond its control. The acceptance of the above goods, when delivered, is understood to constitute a waiver of all claims for damage, by reason of delay. It is understood that settlement will not be withheld on account of temporary delay in the shipment of articles not essential to the drawing of soda water or because of delay for any reason in the installation of said apparatus.

Draw through, and make notes payable at Farmers National Bank, of Bloomsburg, Pa. Ship by.....................................................

(Avoid lines requiring reshipment if possible).

References: Old Customer.

Landlord's name, Wash Titman.            (Signature)
Address, Bloomsburg, Pa.                 Harry Rinker.

.......................
.......................
(Please attach business
card).

it. This credit of $498.50, as it is to be noted, was a credit on the gross price, and not on the rental subsequently provided for, and this constituted a direct payment on account of the property, by which a definite interest was acquired, which the superadded arrangement for a lease was ineffective to qualify. The rental to be paid, also, is nothing more or less than the net price of the property, and with the credit previously given makes up the full gross value of it, for which, upon the basis of a lease, for the term named, there is no possible equivalent benefit. It is true that there is an agreement to surrender the property at the end of the term, but this is accompanied with an option, by which the bankrupt has the right to buy and apply what has been paid, which the formality of a bill of sale and the payment of a dollar, without which no title is to pass, does not detract from. This provision is a constituent part of the agreement and the ultimate aim of it; and the bankrupt being thus clothed from the outstart with the right to buy, at a specified price, on which a substantial credit is in terms given, and the payment of the balance in certain installments being in effect provided for, a sale on condition is thus made out, regardless of what it may be denominated in the writing, which as to creditors becomes a sale absolute. The case is to be classed with Farquhar v. McAlevy. 142 Pa. 233, 21 Atl. 811, 24 Am. St. Rep. 497, and Kelly Road Roller Co. v. Spyker, 215 Pa. 332, 64 Atl. 546, which sustains this view of it. See, also, In re Tice (D. C.) 15 Am. Bankr. Rep. 97, 139 Fed. 52, and In re Morris (D. C.) 19 Am. Bankr. Rep. 422, 156 Fed. 597. The petitioners, therefore, are not entitled to reclaim the property, and the petition must be dismissed, with costs.

4. In December, 1907, the bankrupt obtained from the same parties, upon a similar writing, a carbonator, for use in connection with the soda fountain which he then had, which was also "sold by Hawkins," the same agent; the "price" being $240, and the bankrupt agreeing to lease it for 19 months for that figure, $50 to be paid on receipt and the balance in monthly installments of $10. This agreement is identical in terms with the one for the soda fountain, and not to be distinguished from it. According to the conclusions reached in that connection, the attempt to reclaim must be similarly disposed of.

5. The same fate also must attend the ice cream freezing apparatus, and for even stronger reasons. Except that a blank of the same form is utilized on which to put down the bargain, there is hardly the semblance of anything but a sale to be made out of the instrument as executed. As there appears, through the instrumentality of the same sales agent, in November, 1908, an order was given for certain apparatus, which is specified as follows:

| | | | |
|---|---|---|---|
| 1 # | 813.1 | I. C. Freezer | $ 70.00 |
| 1 # | 54 | Creary I. Braker | 54.00 |
| 12 | 696.9 | Tube 2.75 | 33.00 |
| 12 | 884.9 | Cans 1.60 | 19.20 |
| | | | $176.20 |
| | | Less 5% | 8.81 |
| | | | $167.39 |

This property the bankrupt agrees to lease for the term of three months for a total rental of $167.39, the net price. And then, entirely disregarding the printed provisions of the blank, it is declared, "Terms 30, 60 & 90 days." This cannot be wrested into anything but a sale for the price and upon the terms named, for failure to pay which as so provided the claimants are not entitled to get back the property, but must look to the estate like other creditors.

The petition in each case is dismissed, at the cost of the respective petitioners.

---

### In re MONTELLO BRICK WORKS.

(District Court, E. D. Pennsylvania. December 7, 1909.)

#### No. 2,922.

BANKRUPTCY (§ 318*)—FOREIGN CORPORATIONS—DOING BUSINESS IN VIOLATION OF LAW—VALIDITY OF CONTRACTS—CLAIMS.

Where duebills issued by a bankrupt corporation for money lent it by a foreign corporation were adjudged invalid in the hands of an assignee, and refused allowance against the bankrupt estate on the ground that in lending the money the foreign corporation was doing business in Pennsylvania without having registered as required by the state law, such corporation cannot prove the same indebtedness as a claim against the estate on the theory that, the duebills being void, the lender is entitled to recover on an implied contract as for money had and received; such contracts being equally within the statute.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 318.*]

In the matter of the Montello Brick Works, bankrupt. On certificate of referee concerning claim of United States Brick Company. Order disallowing claim affirmed.

See, also, 163 Fed. 624.

J. Howard Reber, Wellington M. Bertolet, and Duane, Morris & Heckscher, for creditors.

Harry F. Kantner, for trustee.

Isaac Hiester, for receiver United States Brick Co.