### LIQUID CARBONIC CO. v. QUICK et al. (three cases).

### NATIONAL CASH REGISTER CO. v. SAME.

(Circuit Court of Appeals, Third Circuit. October 27, 1910.)

Nos. 1,334–1,337 (52–55).

1. BANKRUPTCY (§ 140*)—PROPERTY PASSING TO TRUSTEE—LEASE OR CONDITIONAL SALE.

A contract under which a cash register was delivered to a bankrupt which, although denominated a lease, fixed no term, and, after stating the value of the machine and certain credits allowed thereon, required the payment of the remainder of such value in installments as "rental," held not one of bailment but of conditional sale void as against creditors under the law of Pennsylvania, and not to entitle the seller to reclaim the machine from the bankrupt's trustee in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 140.*]

2. SALES (§ 5*)—CONTRACT—SALE OR LEASE.

Where an order for certain specified ice cream apparatus was given and accepted with distinct prices named for each piece, "terms 30, 60 & 90

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

days," it constituted a sale on credit, which is not affected by the fact that it is written upon a blank form in which the purchaser nominally agrees to lease the property for three months at a total rental equal to the total net price of the property.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 12; Dec. Dig. § 5.*]

3. BANKRUPTCY (§ 140*)—PROPERTY PASSING TO TRUSTEE—LEASE OR SALE.

A soda water apparatus was delivered to a bankrupt on a contract or order which provided that it was leased to him for the term of 36 months at a monthly rental, at the end of which term it was to be returned by the bankrupt, or he was to have the option to purchase it for $1. In the margin were the words "Sold by Hawkins" and a statement of the gross price, allowance for a secondhand apparatus and the net price, which equalled the total of the rent reserved. *Held* that, under the law of Pennsylvania, such contract was one of bailment with an option to purchase at the end of the term, and that on the occurrence of the bankruptcy before the end of the term the lessor was entitled to recover the property from the bankrupt's trustee.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 140.*]

Appeal from the District Court of the United States for the Middle District of Pennsylvania.

In the matter of Harry Rinker, bankrupt. On appeals from orders of the District Court (174 Fed. 490) by the Liquid Carbonic Company and the National Cash Register Company. Affirmed in part and reversed in part.

C. C. Yetter and W. H. Rhawn, for appellants.

Clinton Herring, for appellee Quick.

John G. Harman and A. W. Duy, for bankrupt, Rinker.

Before BUFFINGTON and LANNING, Circuit Judges, and BRADFORD, District Judge.

LANNING, Circuit Judge. These appeals are from orders dismissing the petitions of appellants for the reclamation of certain articles of personal property in the possession of the bankrupt's trustee. The articles were delivered to the bankrupt under the terms of certain written contracts, which the appellants insist were bailments for hire, and which the appellees insist were conditional sales. If any of the contracts be a bailment, the property delivered under it should be restored to the appellant whose contract is so construed; if any of them be a conditional sale, it is conceded that the property delivered under it belongs to the bankrupt's trustee. The facts are so fully stated in the opinion of the court below (see In re Rinker [D. C.] 174 Fed. 490) that they need not be repeated here.

As to case No. 55—the National Cash Register Company's Case— we agree with the conclusion of the court below. The contract in that case expressed no term for the bailment and no time when the cash register was to be surrendered by the bankrupt to the cash register company. It fixed the value of the register at $620, admitted a credit of $205, and provided for the payment in installments of the remaining $415. True, the remaining $415 is denominated "rental," and there is other language in the contract appropriate to a bailment for hire; but, read as a whole, we think the contract is one of sale and not a bail-

ment. As to this case the decree of the District Court is affirmed, with costs.

We also agree with the conclusion of the court in case No. 52, in which an ice cream apparatus was delivered by the Liquid Carbonic Company to the bankrupt. Although one of the Liquid Carbonic Company's blank printed leases was used in preparing the contract, such changes were made in it as to show that the contract was one of sale and not a bailment. The decree as to this case is also affirmed, with costs.

In case No. 54 we find an order, dated July 1, 1908, addressed by the bankrupt to the Liquid Carbonic Company, requesting that company to ship to him a soda water apparatus, fully described in the order. In the upper left-hand corner are the words "Sold by Hawkins," and in the margin, under the heading "Prices," are entries showing the value of the apparatus to have been $2,227.75, and a credit of $498.50 for a secondhand apparatus, leaving a balance, termed "net price," of $1,-729.25. Then follows language by which the bankrupt declared that he leased the apparatus from the company for the term of 36 months for a total rental of $1,729.25, payable in designated installments. Further on is this language:

"At the expiration of the term of this lease we agree to surrender to you all the property herein described, in good condition, or, at our option, to purchase the same upon the further payment to you of one dollar; upon which payment you are to execute and deliver to us a bill of sale covering said property. No title to said property to vest in us, except as lessees thereof, until the execution of such bill of sale."

This order was accepted by the company. Its full text will be found in 174 Fed. 494–496. We differ with the court below in its construction of this contract. The language employed by the parties shows that they intended to create a bailment with a right in the bailee to become a purchaser at the end of the definite term prescribed for the bailment. The words "Sold by Hawkins," in the upper left-hand corner, and the gross price, allowance for the secondhand apparatus and net price, given in the margin, are separated from the body of the order by lines, and constitute no part of the real contract between the parties. The provisions that the apparatus should be "leased" to the bankrupt, for a specified term and a specified rental, and that at the expiration of the term it should be surrendered to the company, are the indicia of a bailment. The cases of Farquhar v. McAlevy, 142 Pa. 233, 21 Atl. 811, 24 Am. St. Rep. 497, Kelly Road Roller Co. v. Spyker, 215 Pa. 332, 64 Atl. 546, In re Tice (D. C.) 139 Fed. 52, and In re Morris (D. C.) 156 Fed. 597, referred to in the opinion of the court below, differ from the present case in that in none of them was surrender by the party in possession required, nor in some of them was any term of bailment expressed. Following the decisions in Rowe v. Sharp, 51 Pa. 26; Crist v. Kleber, 79 Pa. 290; Enlow v. Klein, 79 Pa. 488; Ditman v. Cottrell, 125 Pa. 606, 17 Atl. 504; Stiles v. Seaton, 200 Pa. 114, 49 Atl. 774; Cincinnati Equipment Co. v. Strang, 215 Pa. 475, 64 Atl. 678; American Car Co. v. Altoona, etc., Railway Co., 218 Pa. 519, 67 Atl. 838; Kelly Springfield Road Roller Co. v. Schlimme, 220 Pa. 413, 69 Atl. 867, 123 Am. St. Rep. 707; and National Cash

Register Co. v. Shurber, 41 Pa. Super. Ct. 187—we think the contract relating to the soda water apparatus should be held to be a bailment, and therefore that the decree of the court as to this contract should be reversed, with costs.

Our conclusion is the same as to case No. 53, in which the Liquid Carbonic Company delivered to the bankrupt certain carbonating machinery. The contract is similar to the one under which the soda water apparatus was delivered in case No. 54. It is unnecessary to say more. The decree as to this contract should also be reversed, with costs.

Decrees as to cases Nos. 52 and 55 affirmed, with costs. Decrees as to cases Nos. 53 and 54 reversed, with costs.

BRADFORD, District Judge (concurring). In cases Nos. 52 and 55 of the Liquid Carbonic Company and of the National Cash Register Company against the trustee of the estate of Harry Rinker, bankrupt, relating respectively to certain ice cream apparatus and a cash register, I fully concur in the opinion and conclusion of the court. In cases Nos. 53 and 54 of the Liquid Carbonic Company against the above mentioned defendant, relating respectively to a carbonator and a soda water fountain, I do not concur in the reasoning of the court and with extreme reluctance concur in its conclusion. In No. 53 the instrument, which the court holds to embody a bailment of the carbonator and an option on the part of the bailee to purchase the same, and not a conditional sale, contains in the upper left hand corner the words "Sold by Hawkins," and on the right hand side of and half way down the sheet under the word "Prices" the following: "Total consideration $2227.75. Less allowance for 2d hand apparatus $498.50. Net price $1729.25." The "rental" is fixed at the identical amount of the "Net price," payable in thirty-six months as follows: By honoring the sight draft or other demand of the Liquid Carbonic Company for $329.25, and the balance in monthly instalments of $40 each. The instrument also contains, among others, the following provisions:

"We also agree, upon receipt or tender of goods or bill of lading for the same, to execute and deliver promissory notes, as collateral security for said deferred payments of rental bearing interest from date at the rate of six per cent. per annum. At the expiration of the term of this lease we agree to surrender to you all the property herein described, in good condition, or, at our option to purchase the same upon the further payment to you of $1. * * * Should we fail to * * * execute said notes, or default in the payment of the rent for any month when the same falls due, * * * then, or in either of said cases, the full amount of rent for balance of term shall forthwith become due and payable, anything in said notes to the contrary notwithstanding. Should any such default be made, you, or your agent or attorney, may, without process of law enter upon our premises, and take possession of and remove said property."

In case No. 54 the instrument mutatis mutandis is similar to that in No. 53. These instruments are transparent attempts by mere indirection to avoid the consequences of the rule based upon a supposed public policy, judicially established in Pennsylvania at an early day, denouncing conditional sales as constructive frauds upon bona fide creditors and purchasers. No sensible man would agree to pay for the mere use and enjoyment of the carbonator or the soda water fountain

for the period of only thirty six months by way of "rental" an amount equal to the whole of the "net price." The term "option" as applied to such an instrument clearly is a misnomer. No man, of sound reason, after paying such a "rental" would exercise the "option" to surrender the apparatus at the expiration of the "term" and go without his money, when by the further payment of but one dollar he would acquire an absolute title. The words "Sold by Hawkins," although in the upper left hand corner, were just as much upon the paper when signed by Rinker and accepted by the Liquid Carbonic Company, as were the other words appearing thereon, and were equally with those words located above both signatures. I perceive no difference in principle or effect between the words "Sold by Hawkins" and the words "It is agreed or admitted that the within mentioned apparatus is sold by Hawkins," placed above the signatures. And if sold, when sold? At the time of the acceptance of the order or thereafter? It is a general, though not universal, rule, that judicial tribunals recognize that as nature abhors a vacuum so the law abhors circuity; and usually the law regards substance rather than form,—the spirit and not the mere letter. The decisions of the Supreme Court of Pennsylvania in cases involving a consideration of agreements substantially similar to those in Nos. 53 and 54 apparently are the exceptions which prove the rule. Unsound as I believe them to be, they have, nevertheless, established a rule of property which, under the doctrine enunciated by the Supreme Court of the United States, must control the federal courts in disposing of cases involving substantially similar transactions occurring in that state. Under these circumstances I have no option, but am forced to concur in the conclusion reached by the court.