## In re HARTDAGEN.

(District Court, M. D. Pennsylvania. July 29, 1911.)

### No. 1,724.

**1. CONTRACTS (§ 176*)—CONSTRUCTION—QUESTION FOR COURT.**

The interpretation of a written contract is for the court which must ascertain the intention of the parties from the writing.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 176.*]

**2. CONTRACTS (§§ 2, 144*)—CONSTRUCTION—VALIDITY.**

In bankruptcy the construction and validity of a contract with the bankrupt must be determined by the local laws of the state.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 2, 41, 145, 724–727; Dec. Dig. §§ 2, 144.*]

**3. BANKRUPTCY (§ 184*)—CONTRACTS OF SALE—VALIDITY.**

A contract between a manufacturer of agricultural implements and a retail dealer therein, which binds the manufacturer to supply the dealer with certain machinery at specified prices and terms, and binds the dealer to buy the machinery, and which provides that the goods on hand and the proceeds of sales of goods received under the contract shall be held in trust for the benefit and subject to the order of the manufacturer until the purchase price has been paid, and which declares that the contract contains all the "conditions of the sale," is a contract of sale whereby the title to the property passes to the dealer, subject to the agreement to hold in trust for the benefit of the manufacturer to secure the payment of the price, and is void under the law of Pennsylvania as against creditors of the dealer, and under Bankr. Act July 1, 1898, c. 541, § 47a, cl. 2, 30 Stat. 557 (U. S. Comp. St. 1901, p. 3438), as amended by Act Cong. June 25, 1910, c. 412, § 8, 36 Stat. 840, vesting the trustee with the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings, the contract is void as to the trustee who may take possession of the property received by the dealer under his contract as against the manufacturer.

Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 184.*]

In the matter of the bankruptcy of James M. Hartdagen. Petition in proceeding to reclaim personal property in the possession of the bankrupt's trustee. Dismissed.

G. J. Benner and John D. Keith, for petitioner.
Donald P. McPherson, for trustee.

WITMER, District Judge. The petitioner, the Walter A. Wood Mowing & Reaping Machine Company, here seeks to reclaim certain personal property, or the proceeds thereof, from the trustee of the bankrupt, James M. Hartdagen. The claimant is a corporation engaged in manufacturing agricultural implements, having its principal office at Hoosick Falls, N. Y. The bankrupt was a retail dealer in such implements with residence and place of business at Tillie,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Adams county, this district. Between September, 1900, and January, 1910, the claimant entered into four several agreements with the bankrupt, and in pursuance of the same delivered to him certain implements consisting of mowers, side delivery rakes, tooth Perry harrows, hay loaders, N. C. Harvesters, and binders, etc. When Hartdagen was adjudged a bankrupt, September 13, 1910, some of these implements, being in his possession, were turned over to his trustee who on demand declined to deliver them to the petitioner, and thereafter these proceedings were instituted. Since, the trustee, by his agreement with the claimant, converted the property in dispute into cash with the understanding that the cash be turned over to the claimant if the court is of the opinion that the claimant can maintain title to this property as against the trustee.

This depends upon the nature of the agreements between the claimant and the bankrupt. These are similar in their terms and conditions, and provide as follows:

"That the said party of the first part agrees to supply the said party of the second part, as herein provided and agreed, the following number and class of Walter A. Wood (harrows and cultivators), delivered on cars at Harrisburg at the prices and terms herein stated, to wit (for example):

| Quantity. | Article. | Specifications. | Price. |
|-----------|----------|-----------------|--------|
| 3 | Disc Harrows. | 12 x 16 | $19.25. |

Terms: Fall 1909, Net cash Jan. 1st, 1910. 5% cash October 1st, 1909.

"(3) And the said party of the second part agrees to buy of the party of the first part the harrows and cultivators specified, at the above prices, and to pay and settle for same as herein provided and agreed.

"(4) And, in case harrows and cultivators additional to those herein contracted for are supplied, the party of the second part agrees to pay for same at the same prices and upon the same terms as herein agreed upon.

"(5) All goods on hand and the proceeds of all sales of all goods received under this contract, whether such proceeds of sales consist of notes, cash, or book accounts, the party of the second part agrees to hold as collateral security in trust and for the benefit of and subject to the order of the party of the first part, until all obligations hereunder due the party of the first part from the second party are paid in full in cash. The party of the second part agrees to surrender to the party of the first part on demand at any time all goods on hand received from said party of the first part hereunder, and likewise agrees upon demand to surrender, assign, and turn over to said first party all notes, cash, checks, and book accounts received by the party of the second part from, on account of, or arising out of the sale of, goods or harrows or cultivators so received from the party of the first part, or such portion or amount of said cash, checks, and book accounts as shall be sufficient to pay for said goods and harrows and cultivators and settle the account therefor in full to the satisfaction of the party of the first part. When such notes, accounts, or unsold goods are so demanded and surrendered, assigned, and turned over, they shall be credited to the party of the second part and considered as payment on account. All notes and accounts so surrendered, assigned, and turned over to the party of the first part shall, before assign-

ment and surrender thereof, be respectively indorsed and guaranteed by party of the second part.

"(6) Said party of the first part reserves the right to annul this agreement at any time, by giving notice in writing to said party of the second part, in case it becomes satisfied that the party of the second part is not entitled to the credit hereby extended. In case of death of the party of the second part, or if a firm, death of one member, or should the said second party sell, dispose of, or remove to another place, or default in any payments coming due under this contract, or in any case of preferences given other creditors, any account, notes or other obligation growing out of this contract or arising therefrom, shall become due and payable at once in cash to the party of the first part. * * *

"(11) This contract between the said parties contains all the conditions of the sale, in writing. No verbal agreements will be recognized."

The contracts entered into between the Walter A. Wood Mowing & Reaping Machine Company and James M. Hartdagen, the bankrupt, are agreements of sale, whereby the title to the property in question passed to James M. Hartdagen, subject to an agreement stated in the contracts to hold the property in question for the benefit of the company, to secure to it the payment of the purchase price of the property so sold.

[1] The interpretation of the contract is for the court, and the intention of the parties must be ascertained from the writing.

[2] In bankruptcy its construction and validity must be determined by the local laws of the state. Thompson v. Fairbanks, 196 U. S. 516, 25 Sup. Ct. 306, 49 L. Ed. 577, 13 Am. Bankr. Rep. 437; Humphrey v. Tatman's, 198 U. S. 91, 25 Sup. Ct. 567, 49 L. Ed. 956, 14 Am. Bankr. Rep. 74; York Mfg. Co. v. Cassel, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782, 15 Am. Bankr. Rep. 633.

[3] It is clear that the agreement entered into by the parties is neither a lease nor bailment. It throughout speaks of a sale, and contains no terms of rental or other clause by which it is sought to disguise the arrangement as a lease or bailment. The entire contract looks to the payment of the purchase price and contains no stipulation for the return of the property, but in the event of failure to pay for it. It is stipulated that title is to be retained by the vendor until fully paid for by the vendee, and that the written agreement contained all the "conditions of this sale." This arrangement between the parties to the contract may be binding upon them as it was no doubt originally intended, but the policy of the law of Pennsylvania abhorring secret liens makes it absolutely void as against creditors. Rose v. Story, 1 Pa. 190, 44 Am. Dec. 121; Wiley's Appeal, 90 Pa. 210; Thompson v. Parch, 94 Pa. 275; Haak v. Linderman, 64 Pa. 501, 3 Am. Rep. 612; Stadtfelt v. Huntsman, 92 Pa. 53, 37 Am. Rep. 661; Dearborn v. Raysor, 132 Pa. 231, 20 Atl. 690; Ott v. Sweatman, 166 Pa. 217, 31 Atl. 102; In re Rinker (D. C.) 23 Am. Bankr. Rep. 62, 174 Fed. 490, in so far as affirmed in Liquid Carbonic Co. v. Quick, 25 Am. Bankr. Rep. 394, 182 Fed. 603, 104 C. C. A. 668; In re G. K. Trunk Co. (D. C.) 23 Am. Bankr. Rep. 914, 176 Fed. 1007. The contracts are also void as to the trustee of the bankrupt by force and virtue of the modification of the federal bankruptcy act by amendment June 25, 1910, section 47, cl. 2, subd. A, which reads in part:

"And such trustee, as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies and powers of a creditor holding a lien by legal or equitable proceedings thereon."

This provision of the bankruptcy act puts the trustee, in so far as the assets of the estate are concerned, in the position of a lien creditor, and to this extent this case is distinguished from the case of the York Mfg. Co. v. Cassel, and others of its character, which no doubt inspired Congress to enact the amendment recited.

The petition is dismissed.