# National Cash Register Company *v.* Shurber, Appellant.

*Bailment—Lease—Conditional sale.*

1. A writing designated as a "lease" of a machine will be construed to be a bailment and not a conditional sale, where it appears that the bailees as stipulated in the writing deposited a stated amount as partial security for the fulfillment of the agreement, which was to be returned to them upon the surrender of the machine provided the terms of the lease had been complied with; that they gave their promissory note as collateral for the rent payable in seven monthly installments, that the aggregate amount of this note and the deposit was the agreed value of the machine; and that the agreement gave the lessees the option, after the expiration of the lease and the surrender of the chattel to purchase the chattel upon payment of the amount deposited as partial security.

2. In such a case the superadded agreement that should the machine get out of order from ordinary use at any time within two years from the date of shipment, the bailor would repair the same gratis, does not have the effect to convert the transaction into a sale.

3. The fact that the original intention of the parties is to make a sale, and that such is the legal effect of their first agreement, does not prevent a change while it is still executory, into a bailment with an alternative of future conversion into a sale on the compliance with the stipulated conditions.

*Estoppel—Estoppel in pais—Equitable estoppel.*

4. An estoppel in pais does not operate in favor of everybody. In general it operates only in the favor of a person for whom it was intended, and who has been misled to his injury; and he only can set it up.

5. Where there is an attempt to apply the doctrine of equitable estoppel, one essential is that the party in whose favor it is invoked must himself act in good faith.

6. In an action of replevin it appeared that the plaintiff had leased a chattel, and that the defendant had purchased the chattel at a constable's sale, the bailee had delivered the chattel to another person with instructions to return it to the plaintiff, and to this person the plaintiff had written a letter in which the bailment was designated as a sale. This person instead of delivering the chattel procured the judgment against the bailee and issued execution on which the chattel was sold by the company. The defendant had no knowledge of the letter written by the plaintiff. Plaintiff delayed enforcing its demand for thirty-three days. *Held,* (1) that the defendant could not use the letter as an estoppel against the plaintiff, (2) that he could not work out an equitable

estoppel against the person who had procured the sale of the chattel, inasmuch as the latter was not in a position to claim an equitable advantage by reason of anything that the plaintiff had said or done; and (3) that plaintiff was not guilty of laches.

*Corporations—Foreign corporations—Registration—Act of April 22, 1874, P. L. 108.*

7. A foreign corporation may institute an action in replevin to recover its personal property from one who has no contractual relation with it, although the company is not registered under the Act of April 22, 1874, P. L. 108.

Argued May 10, 1909. Appeal, No. 17, April T., 1909, by defendant, from judgment of C. P. Armstrong Co., Dec. T., 1907, No. 148, on verdict for plaintiff in case of National Cash Register Company v. George Shurber. Before RICE, P. J., PORTER, HENDERSON, MORRISON and HEAD, JJ. Affirmed.

Replevin to recover a cash register. Before PATTON, P. J. The facts are stated in the opinion of the Superior Court. Verdict and judgment for plaintiff. Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*Orr Buffington,* of *Buffington & Gilpin,* and *C. E. Harrington,* for appellant.—The appellant contends that the court below should have interpreted the paper itself under which delivery was made as a conditional sale. Even if this is not correct it was the plain duty of the court to submit the character of the paper with the oral and other written evidence to the jury as a question of facts: Ladley v. U. S. Express Co., 3 Pa. Superior Ct. 149; Farquhar v. McAlevy, 142 Pa. 233; Gernert v. Knerr, 3 Pa. Superior Ct. 47; Laundry Machinery Co. v. Fromuth, 15 Pa. Superior Ct. 339; Hill v. Mfg. Co., 3 Pa. Superior Ct. 398; Porter v. Duncan, 23 Pa. Superior Ct. 58; Miller v. Browarsky, 130 Pa. 372; Car Co. v. Altoona, etc., R. R. Co., 218 Pa. 519; Wolff Dryer Co. v. Bigler & Co., 192 Pa. 466; Penna. R. R. Co.'s App., 86 Pa. 80.

The writing of the letters designating this register as having been sold caused the mischief in this case, and even if it was a

mistake to so designate it, yet it was the act of the appellee and he must abide by it: Vanderslice v. Ins. Co., 13 Pa. Superior Ct. 455; O'Connor v. Clark, 170 Pa. 318.

The court erred in the refusal of appellant's first point which allowed the appellee to recover without having registered under the provisions of the Act of April 22, 1874, P. L. 108: Wolff Dryer Co. v. Bigler & Co. 192 Pa. 466.

*H. L. Golden,* with him *Harry C. Golden,* for appellee.—The learned court below properly construed the contract involved in this case as a contract of bailment: American Car & Foundry Co. v. Altoona & Beech Creek Railroad Co., 218 Pa. 519; Jones v. Wands, 1 Pa. Superior Ct. 269; Potter v. Stetson & Co., 11 Pa. Superior Ct. 627; Miller v. Douglas, 32 Pa. Superior Ct. 158; Painter v. Snyder, 22 Pa. Superior Ct. 603.

The defendant acquired no title by virtue of his purchase at the constable's sale: Jones v. Wands, 1 Pa. Superior Ct. 269; Potter v. Stetson & Co., 11 Pa. Superior Ct. 627.

The plaintiff, a foreign corporation, can maintain an action of replevin for the recovery of its property from defendant, with whom it has no contractual relation, even though it (the plaintiff) has not complied with the act of April 22, 1874, and other registration or taxing acts of a similar nature: King Optical Co. v. Royal Ins. Co., 24 Pa. Superior Ct. 527; Berry Hill Mineral Spring Co. of Virginia v. Pile et al., 17 Pa. Dist. Rep. 246.

OPINION BY RICE, P. J., October 11, 1909:

The court was right in its construction of the writing under which the chattel in dispute was delivered to Vergos and Kyramis. It contained all the essentials of a contract of bailment, and went beyond the indispensable essentials in including the express agreement of the bailees to surrender the chattel to the bailor in good condition at the expiration of the lease, which was for seven months at a stipulated rent. Upon principle, and according to the doctrine of numerous cases, the facts that the bailees, as stipulated in the writing, deposited $15.00 as partial security for the fulfillment of the agreement, which was to be returned to them upon the surrender of the chattel pro-

vided the terms of the lease had been complied with; that they gave their promissory note, as collateral for the rent, payable in seven monthly installments; that the amount of this note, and the deposit of $15.00 ($85.00] was the agreed value of the machine; and that the agreement gave the lessees the option, after the expiration of the lease and the surrender of the chattel, to purchase the chattel upon payment of the amount deposited as partial security, neither taken singly nor together converted the transaction into a sale. See Painter v. Snyder, 22 Pa. Superior Ct. 603; Euwer v. Greer, 29 Pa. Superior Ct. 262; Miller v. Douglas, 32 Pa. Superior Ct. 158, and the cases therein cited. Nor did the superadded agreement, that should the chattel get out of order from ordinary use at any time within two years from date of shipment, the bailor would repair the same gratis, have that effect. For as the bailees were given the option to purchase at the expiration of the lease, it was entirely consistent with the intention to create a bailment for the parties to make an agreement as to repairs, which would be effective not only during the term but also in the event of the bailees becoming the purchasers after the expiration of the lease and the termination of the bailment. "Possession under a mere bailment for hire is not a constructive fraud, otherwise much of the business of men would be ended, and the poorer the bailee the less would be his ability to hire the use of property needful to him:" Crist v. Klebler, 79 Pa. 290; American Car, etc., Co. v. Altoona, etc., R. R. Co., 218 Pa. 519. "The fact that the original intention of the parties is to make a sale, and that such is the legal effect of their first agreement, does not prevent a change while it is still executory into a bailment with an alternative of future conversion into a sale on the compliance with the stipulated conditions:" Goss Printing Press Co. v. Jordan, 171 Pa. 474; Stiles v. Seaton, 200 Pa. 114. In the present case there was no extraneous evidence of anything said or done at or prior to the delivery of the chattel to the bailees, which, under any decision that has come to our notice, would sustain a finding by the jury that a present sale was consummated or intended, and that the written contract was a subterfuge resorted to in order merely to preserve a lien on the

chattel until the price should be paid. Nor is there any adequate evidence that what was at first a bailment had, in the intention of the parties, become converted by subsequent dealings into a sale. We come then to the question of laches and estoppel. The lease was made near the end of August, 1907. On September 23 of the same year the bailees left the chattel with one Paul Liberakis to be delivered to the bailor, Liberakis consenting to deliver it upon the bailor's demand and assenting to the bailees notifying the bailor to that effect. Two days later, the bailor, complying with the directions of the bailees, forwarded from Pittsburg to Liberakis at Kittanning an empty box in which to ship the chattel to Pittsburg, and mailed to Liberakis the following letter, written by one of its officials or clerks: "Vergos & Kyramis, who were in business in your town, and to whom we sold one of our cash registers, stated that they left it with you, and that if we would send you an empty box you would ship it to our Pittsburg office. We are shipping a box by express, prepaid, to-day, and would kindly ask you that you put it into this box and ship it to our address at once. Thanking you in advance for your attention, we remain, yours truly." Liberakis did not comply with this request and his implied undertaking to deliver the chattel to the bailor, nor did he reply to the letter, but instead, obtained a judgment before a justice of the peace against the bailees, and by virtue of process issued thereon caused the chattel to be levied on on October 21, 1907, and sold on October 28, as their property, the defendant in the present action of replevin becoming the purchaser. There is no evidence that the bailor, its officers or agents had any knowledge of these proceedings. As already pointed out, the written contract under which the chattel was delivered to and held by Vergos & Kyramis was a contract of bailment, with a superadded executory contract to sell. To the mind of a layman the distinction between such a contract and a conditional sale is not very clear, and the mere fact that the writer of the above letter spoke of it as a sale did not change its legal effect. Nor can the defendant base an estoppel on this erroneous designation of the nature of the agreement, because the letter was not addressed to him and there is no evi-

dence that he ever saw it or that its contents were ever communicated to him. An estoppel in pais does not operate in favor of everybody. In general it operates only in favor of a person for whom it was intended, and who has been misled to his injury; and he only can set it up: Bispham's Equity (7th ed.), sec. 293; Sensinger v. Boyer, 153 Pa. 628; Work v. Prall, 26 Pa. Superior Ct. 104; Davis v. Fenner, 30 Pa. Superior Ct. 389. If it be said that the defendant has an equity which can be worked out through that of Liberakis, the obvious answer is that Liberakis was not in position to set up an equitable estoppel. He had consented to take the chattel and deliver it to the bailor on its demand, and he knew from what the bailees told him that they were to notify the bailor of his undertaking. When he received the above letter, good faith on his part required that he comply with the request, as he had impliedly undertaken to do, or give the bailor notice of his declination to do so, or of the proceedings to sell the chattel as the property of Vergos & Kyramis. Where there is an attempt to apply the doctrine of equitable estoppel one essential is that the party in whose favor it is invoked must himself act in good faith. And it has been said that estoppel against estoppel sets the matter at large: Tibbetts v. Shapleigh, 60 N. H. 487. We do not say that Liberakis was estopped to levy on and sell the chattel, taking the chance whether title would pass by the sale, but only that he was not in position to claim an equitable advantage by reason of anything that the bailor had said or done. One purpose for which the defendant offered the plaintiff's letters and the evidence as to the action of Liberakis was to show that he was the plaintiff's agent (a doubtful proposition) and violated his trust, and it is argued that the rule which declares that when one of two innocent persons must suffer, the loss should fall on him whose act or omission made the loss possible, is applicable, and therefore the loss should fall on the plaintiff. But if the possession of a seller of personal chattels is that of a bailee or trespasser this rule does not apply: Miller Piano Co. v. Parker, 155 Pa. 208. Upon the question of laches the learned judge appropriately says, and we leave that branch of the case without further comment: "We have examined

carefully the authorities cited by defendant's attorney. They all hold that where the plaintiff has been guilty of laches, and an innocent purchaser has suffered thereby, the loss cannot fall upon him. No fault can be found with these decisions. They are undoubtedly the law. But the weakness of the defendant in the case now before us is that there was no evidence to show laches on part of the plaintiff. On September 25th, 1907, it wrote Liberakis to return the register. He failed to do so. It again wrote him on October 28th, 1907. In the meantime Liberakis had betrayed the trust reposed in him. In no case that we have been able to find has it been held that the mere delay for thirty-three days to retake property by the owner, would forfeit it to a trespasser."

Complaint is made of the ruling of the court as to the right of the plaintiff to bring this action, without being properly registered under the Act of April 22, 1874, P. L. 108. A similar question was raised in United States Circle Swing Co. v. Reynolds, 224 Pa. 577, in which Justice POTTER said: "But in so far as the facts of this case go, they disclose nothing which would forbid the plaintiff, as a foreign corporation, to maintain an action in the courts of Pennsylvania, to recover its personal property. William B. Reynolds who claimed and retained the property, had no contract relations with the plaintiffs, and he would therefore have no standing to object that the plaintiff corporation was doing business in this state, without having complied with the registration act. This principle is clearly set forth in King Optical Co. v. Royal Insurance Co., 24 Pa. Superior Ct. 527." In the case cited in the opinion our Brother HENDERSON speaking for this court said: "A foreign corporation could own personal property in this state prior to the act of 1874, and there is nothing in the statute which denies to them that right. The principal objects of the statute were to bring foreign corporations within reach of legal process and to subject them to the taxing power of the state. It was not intended to deny to them the right of ownership or to effect a forfeiture of title." As in the cases cited, so here, there is no contractual relation between the plaintiff and the defendant. The defendant is not in position to assert that the plaintiff forfeited its title to the

property, either as to him or as to Liberakis or as to Vergos & Kyramis. We are of opinion that the case is fairly within the principle of the two cases cited.

The assignments of error are overruled and the judgment is affirmed.