## Jackson et al. *v.* Myers, Guardian, Appellant.

*Decedents' estates—Collateral inheritance tax—Real estate—Sale of minor's interests—Liability of purchaser for tax—Contracts—Construction.*

1. The collateral inheritance tax is not levied upon an inheritance or legacy but upon the estate of the decedent; what passes to the heir or devisee, and to which he acquires title, is the portion of the estate remaining after the payment and satisfaction of the collateral inheritance tax.

2. Where the guardian of certain minors having an interest in a decedent's estate agreed, in settlement of a prolonged litigation with other heirs of the decedent in respect to the estate, to sell to the other heirs "all the right, title and interest of the said minors of, in and to the estate of......deceased, real and personal, for the sum of $40,000 in cash without any deduction whatever, title to be in fee simple, good and marketable, and such as will be insured by any reputable title company," the agreement contemplated that what should be sold was the interest of the minors after the payment of collateral inheritance tax.

3. Where in such case real estate was embraced in the property sold and the collateral inheritance tax was not paid, and thereafter the vendee in order to make title was compelled to pay the collateral inheritance tax thereon he was not entitled to recover from the guardian of the minors the amount of such payment.

4. In construing a contract that is ambiguous or contains apparently repugnant clauses, the court should consider the negotiations leading to its formation, its subject-matter, the consideration, the circumstances under which the parties contract, and the object to be accomplished.

Argued Jan. 18, 1917.   Appeal, No. 235, Jan. T., 1916, by defendant, from judgment of C. P. No. 5, Philadelphia Co., March T., 1916, No. 1924, for plaintiffs, for want of a sufficient affidavit of defense, in case of Joseph A. Jackson, Bessie A. Jackson Curtis, Joseph Jackson Restein and James Restein v. Arthur J. Myers, Guardian of Lillian M. Jackson and Ariel K. Jackson, Minors. Before BROWN, C. J., MESTREZAT, POTTER, STEWART and FRAZER, JJ.   Reversed.

Assumpsit for the amount of collateral inheritance tax paid by plaintiffs upon a decedent's real estate.

Rule for judgment for want of a sufficient affidavit of defense.   Before MARTIN, P. J.

The opinion of the Supreme Court states the facts.

The lower court entered judgment for plaintiffs for want of a sufficient affidavit of defense.   Defendant appealed.

*Error assigned* was in entering judgment for plaintiffs for want of a sufficient affidavit of defense.

*James W. Laws,* for appellant.—A collateral inheritance tax is not a tax on the property or interest which passes to the beneficiary but a deduction from the amount which would otherwise pass to him: Strode v. Commonwealth, 52 Pa. 181; Finnén's Est., 196 Pa. 72.

Plaintiffs are estopped from claiming any deductions: Logan v. Gardner, 136 Pa. 588; Frauenthal's App., 100 Pa. 290.

*Albert T. Bauerle* and *John G. Kaufman,* with them *V. Gilpin Robinson,* for appellees.—The party who inherits the estate owes the collateral inheritance tax to the Commonwealth: Commonwealth v. McGahey, Admr., 57 Pitts. L. J. 527; Mellon's App., 114 Pa. 564; Martin's Est., 36 Pitts. L. J. 145.

OPINION BY MR. JUSTICE MESTREZAT, March 12, 1917:

This is a rule for judgment for want of a sufficient affidavit of defense.   The rule was made absolute, and the defendant has appealed.

George W. Jackson died intestate, unmarried, and without issue, leaving to survive him Joseph A. Jackson, a half-brother, Bessie A. Jackson Curtis, a half-sister, and Joseph Jackson Restein and James Restein, sons of a deceased half-sister, who are the plaintiffs in this action.   He also left surviving him two nieces, Lillian M.

Jackson and Ariel K. Jackson, minor children of a deceased brother of the whole blood, Daniel W. Jackson, and their guardian, Arthur J. Myers, is the defendant. Prior to the institution of this suit, the parties had been for sometime involved in litigation, and in order to effect a compromise and settle the differences between them they entered into a contract by which the guardian of the two minor children, the defendant in this action, agreed, subject to the approval of the Orphans' Court, to sell to the plaintiffs, who agreed to buy, "all the right, title and interest of the said minors of, in and to the estate of George W. Jackson, deceased, real and personal, for the sum of $40,000 in cash without any deduction whatever; . . . . . . title to be in fee simple, good and marketable, and such as will be insured by any reputable trust company, subject only to such encumbrances as appear by" two bills in equity filed in the Court of Common Pleas of Philadelphia County, and two ground rents.   The sale was of an interest in both real and personal property.   The guardian applied to the Orphans' Court for leave to make sale of his wards' interest in the real and personal estate of George W. Jackson, deceased, upon the terms contained in the agreement, and, the court being of the opinion that the sale of the minors' interest for the sum of $40,000 was to their advantage, a decree was entered approving the report of the examiner and master recommending that the guardian be authorized and empowered to sell the interest of his wards in the property.   The collateral inheritance tax upon the estate of George W. Jackson, deceased, was not paid at the time the settlement was made, and the guardian refused to pay it, claiming that, under the agreement and the order of the Orphans' Court authorizing the sale, he was not required to pay the tax.   The plaintiffs contended that the guardian should pay the tax, that it was a lien upon the interest of the minors in the estate which the plaintiffs had purchased, and that, under the terms of the agreement, the defendant was required to pay it.

The plaintiffs having previously agreed to sell the property to another purchaser, accepted the deed from the guardian and, in order to avoid liability for breach of their contract, paid under protest the sum of $40,000 without deducting the tax. In a subsequent partition proceeding in the estate of George W. Jackson, deceased, some real estate was sold and from the proceeds the Commonwealth collected the collateral inheritance tax, the amount due upon the share of the estate conveyed to the plaintiffs being $2,085.21. This suit was instituted by the plaintiffs to recover this sum.

The facts are set out in detail in the statement and affidavit of defense. The single question involved is whether under the contract of sale the plaintiffs or the defendant should pay the collateral inheritance tax on that part of the estate of George W. Jackson, deceased, in which the defendant's wards had an interest which was sold by the defendant to the plaintiffs. The plaintiffs claim that the tax was a debt due from the defendant's wards, heirs of the decedent, and that it was a lien on the estate of the decedent which, under the terms of the agreement, the defendant was required to satisfy and remove; and the plaintiffs, having been compelled to pay the tax in order to convey the property unencumbered to a purchaser, are entitled to be reimbursed for the amount of the tax paid by them. The defendant denies the right of the plaintiffs to recover on the ground that he sold to the plaintiffs and conveyed only the right, title and interest of the minors in the estate of George W. Jackson, deceased, for the net sum stipulated, and that this interest was limited to such property as remained after the collateral inheritance tax was paid upon the estate. The learned court below held that the defendant was liable for the tax inasmuch as the agreement to sell stipulated in terms that the title should be good and marketable and such as would be insured by any reputable trust company, subject only to such encumbrances as were specifically excepted in the agreement.

The act of assembly imposing the payment of a collateral inheritance tax provides that "all estates...... passing from any person, who may die seized or possessed of such estates, [to collateral heirs]......shall be and they are hereby made subject to a tax of $5 on every $100 of the clear value of such estate or estates." The executors and administrators and their sureties are discharged from liability for the tax with which they are charged only when they have paid it, and the tax is made a lien on the estate until it is settled and satisfied. The register of wills is made the agent of the Commonwealth for the collection of the tax, and he is authorized to enforce payment of a collateral inheritance tax against real or personal property by proceedings in the Orphans' Court.

It will be observed that the statute imposes the tax on the estate of the decedent. It becomes a lien and is fastened upon the estate from the moment of the decedent's death and must be discharged by payment before the estate passes to the collateral heir. It is levied on the estate in the hands of the personal representative who, with his sureties, is made liable for its payment. The State becomes a preferred beneficiary under the act imposing the tax, and it is entitled to its share of the estate before the claims of heirs or devisees can be recognized or satisfied. The latter take only such part of the decedent's estate as remains after the payment of the tax which is not levied upon the inheritance or the legacy but, as already observed, upon the estate of the decedent. What passes to the heir or devisee, and to which he acquires title, is the portion of the estate remaining after the payment and satisfaction of the collateral tax.

This interpretation of the statute imposing the collateral inheritance tax is sustained by the decisions of this court. In Strode v. Commonwealth, 52 Pa. 181, a leading case on the subject, the question was whether that part of a decedent's estate, passing to collaterals, which consisted of bonds of the United States that were

exempt by law from State taxation was liable to collateral inheritance tax.  We held that the collateral inheritance tax is not levied on a specific article, but on the estate of the decedent, and that, therefore, it is not a tax upon the bonds but upon the estate of which they are a part.  In delivering the opinion Mr. Chief Justice WOODWARD said (p. 188) : "The mistake of the learned counsel for the plaintiff in error consists, we conceive, in treating this as a tax of the government bonds, when it is really a tax upon a decedent's estate, dying without lineal heirs.......That estate passed into the hands of the executor for administration, and is taxed in his hands as an estate.  The law takes every decedent's estate into custody, and administers it for the benefit of creditors, legatees, devisees and heirs, and delivers the residue that remains, after discharging all obligations, to the distributees entitled to receive it."  Finnen's Est., 196 Pa. 72, was an appeal from an assessment of collateral inheritance tax.  In delivering the opinion Mr. Chief Justice GREEN said (p. 74) : "That which the legatee gets and keeps is the aggregate sum bequeathed, less the amount of the tax.  The tax must be retained by the person who has the decedent's property in charge.  It is, therefore, not a tax upon the property or money bequeathed, but a diminution of the amount that otherwise would pass under the will or other conveyance, and hence that which the legatee really receives is not taxed at all.  It is that which is left after the tax has been taken off.  It is only imposed once, and that is before the legacy has reached the legatee and before it has become his property."  The learned Chief Justice then cites with approval Strode v. Commonwealth, supra, and quotes part of the opinion of the court below in that case, which we affirmed, wherein it is said that the tax is "a restriction upon the right of acquisition by those who under the law regulating the transmission of property are entitled to take as beneficiaries without consideration.  The state is made one of the beneficiaries.  It lays its hands upon

estates under such circumstances, and claims a share, and whether the share is exacted as a tax or duty or whatever else, or the machinery employed in levying an ordinary tax is adopted or not, it is of no consequence." Orcutt's App., 97 Pa. 179, is then cited as holding the same doctrine.

The collateral inheritance tax law of the State, as thus interpreted, did not impose a lien upon the interest of the defendant's wards in Jackson's estate. The failure of the learned court to observe the distinction, clearly pointed out in the authorities above cited, between a lien on the estate of the decedent and on the interest of the defendant's wards in that estate led it to the erroneous conclusion that the tax was a lien within the meaning of the contract of sale which the defendant was required to discharge. The estate of George W. Jackson, deceased, did not pass to the collateral heirs until the tax was paid. If Jackson's representative delivered the personal estate to the beneficiaries before the payment of the tax, the statute unmistakably fixed him for it. If the heirs took possession of the real estate, the tax being unpaid, it was subject to the statutory lien, but the residue, after payment of the lien, was discharged from the payment of the tax, and their title was only to that part of the estate "which is left after the tax has been taken off." In selling their right, title and interest in and to the estate of the decedent, the defendant's wards could sell only the part of the estate left after the payment of the tax. It was that title which they were required to make good, marketable, and such as would be insured by a reputable trust company. If there were no encumbrances against it, the plaintiffs could not complain. The lien reported by the trust company was against Jackson's estate and not against the part of his estate to which the heirs succeeded.

In construing a contract which is ambiguous or contains apparently repugnant clauses, the court should consider the negotiations leading to its formation, its

subject-matter, the consideration, the circumstances under which the parties contract, and the objects to be accomplished. Interpreting the contract in the present case in the light of the circumstances and under a proper construction of the collateral inheritance tax law, we are clear the parties intended that the plaintiffs should pay the defendant, as stated in the agreement, "$40,000 in cash, without any deduction whatever." The parties had been engaged in much litigation over their rights to the decedent's property, and both sides desired that it should be ended. The title of the minors to the property was attacked and they were without means to carry on litigation. If this attack had been successful they would have been penniless. There were many reasons why the other parties also should desire an end of the litigation. The story of their disputes and disagreements is a long one, and is told in detail in the pleadings. It was under these circumstances that the contract of sale of the minors' interest in the estate of the decedent, was entered into and which, it was supposed, would end the existing feuds. The contract fixed by clear and explicit language what the plaintiffs were to pay and what the defendant was to receive for the interest of the minors in the property. It was "$40,000 in cash, without any deduction whatever." The negotiations between the parties and the construction put upon the agreement by the Orphans' Court when it granted the guardian the authority to sell clearly show that this provision of the contract unmistakably carried out the intention of the parties. The master, appointed by the Orphans' Court, reported, inter alia, as follows: "The substance of this agreement (so far as the minors' interests are concerned) is that the guardian shall sell, and the other parties to said agreement shall buy the entire interest of the minors in the estate of George W. Jackson, deceased, for the net sum of $40,000 in cash." Other parts of his report also show that he interpreted the contract as providing for a net consideration of the stipulated sum and, hence,

he reported that the sale contemplated by the agreement "for the sum of $40,000 would be for the best interests of the minors." The petition presented to the Orphans' Court for leave to make the sale was joined in by the plaintiffs, and it was therein set forth, inter alia, that the plaintiffs had offered in writing to purchase the minors' interest in the property "for the sum of $40,000 in cash" with the provision that "all adverse claims set up against said minors' estate in all the above proceedings" should be taken care of by the purchasers, and that all costs and expenses "shall be assumed by said purchasers, and said minors' estate entirely relieved therefrom." It is, therefore, difficult to see how "any deduction whatever" can be made from the stipulated purchase-price without infringing the contract of sale. It is true that the contract required the title to be good and marketable, and provided against encumbrances, but, so far as the record discloses, the title is good and marketable, and the only alleged encumbrance against the title of the minors is the collateral inheritance tax levied against the estate of the decedent. We must assume that the parties dealt with full knowledge of the law, and, therefore, knew that the estate of George W. Jackson, deceased, passing to the minors, was subject to a collateral inheritance tax which was a lien and must be paid before the minors received and could convey it. With this knowledge, the plaintiff contracted to pay the defendant "$40,000 in cash, without any deduction whatever" for their interest in the estate. The natural and necessary inference is that the parties meant what their contract clearly imports, that the stipulated price was to be paid without deducting the collateral inheritance tax. We think, therefore, that the case must be ruled against the plaintiffs on a proper interpretation of the contract.

The judgment of the court below is reversed with a procedendo.