## JACQUARD KNITTING MACHINE CO., Inc., v. VENNELL.

### No. 4621.

Circuit Court of Appeals, Third Circuit.
May 27, 1932.

Rehearing Denied July 19, 1932.

Charles J. Weiss and Robert vonMoschzisker, both of Philadelphia, Pa., for appellant.

Samuel W. Cooper, Sidney E. Smith, and Frank A. Chalmers, all of Philadelphia, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge.

This case involves the constantly recurring question of whether the transaction involved was a bailment or a conditional sale of chattels. Under the Pennsylvania decisions, a single contract can make provision for a present bailment of chattels and provide also for a future sale of such chattels on the arising of certain conditions. Where such a dual contract clearly evidences such intent of the parties, it will be enforced, and while the bailment lasts, the title will remain in the lessor, and no title passes until the bailment ends and until the future conditions arise and the owner then passes title by a bill of sale. But difficulty arises in these cases where contracts, which are in form bailments, are really conditional sales with an attempted holding of title as security for the unpaid purchase money. The question in the present case is whether when made, the contract here involved, while providing for a lease, was in fact a present conditional sale. The court below decided it was the latter, and from a decree so holding this appeal was taken.

A contract where the parties clearly intend a present bailment and a future sale with a then passage of title being legal and enforceable, we think the tests laid down by the Pennsylvania courts, in substance, are that, where provision is made for a future sale of leased goods with the provision that title shall not pass until certain stipulated conditions exist, the transaction is to be deemed a present bailment and not a conditional sale.

In ascertaining whether the transaction be a lease or a conditional sale, where, as

here, the language, particularly that of "down payment," is doubtful, susceptible of more than one construction, and therefore ambiguous, all the facts, the nature and situation of the subject-matter and of the parties, and "the apparent purpose or object of making the contract in the form in which it was made" should be considered, Bangor Peerless Slate Company v. Bangorvein Slate Company, 270 Pa. 161, 165, 113 A. 190; Jackson v. Myers, 257 Pa. 104, 110, 101 A. 341, L. R. A. 1917F, 821; Myers' Estate, 238 Pa. 195, 86 A. 89; or, to use the words of Mr. Justice Brewer in Davis v. Patrick, 141 U. S. 489, 12 S. Ct. 58, 60, 35 L. Ed. 826, in construing a contract: "The real character of a promise does not depend altogether upon the form of expression, but largely on the situation of the parties." This is in accord with the decisions in Pennsylvania, where in Keim & Keim v. Lochrie & Reese, 93 Pa. Super. Ct. 562, quoting from Tucker v. Fertig, 275 Pa. 351, 119 A. 412, the Superior Court said: " * * * In ascertaining the intention of the parties, we may properly consider the contract in view of the circumstances existing at the time of its execution, the situation of the parties at that time, the necessities for which they naturally provided, the advantages each probably sought to secure and the relation of the properties in regard to which they negotiated."

Bearing on the question of the giving of notes, which was alluded to by the court below, we note that in Walton v. Tepel, 210 F. 161, 162, this court, referring to the Pennsylvania decisions, said: "The general principle deducible from the adjudged cases is that the mere giving of notes does not turn a bailment into a sale. * * * Manifestly, such notes are given, not to annul a contract of bailment, but to provide for its step by step fulfillment."

With these principles in view, we turn to the facts before us.

 The Jacquard Knitting Machine Company, Inc., (hereafter called Jacquard) was the owner of the knitting machines here involved. The Rex Knitting Mills (hereafter called Rex) had a knitting mill. On February 24, 1928, Jacquard, by a valid bailment lease, rented to Rex three of the knitting machines here in question. This lease made provision for a sale of the machines by Jacquard to Rex on payment by Rex of the rentals of the three machines as provided in the lease.

Subsequently, Jacquard leased three additional machines to Rex, and at that time the first lease was surrendered, and all six machines were included in a new lease with provision for a sale of the six machines by Jacquard to Rex on payment of the rental of the six machines as provided in such second lease.

Later on three more machines were leased by Jacquard to Rex, and the second lease was surrendered, and all machines were included in a third lease, in which provision was made for a sale of the nine machines by Jacquard to Rex on payment of the rentals on the nine machines as provided in such third lease. On the giving of the second and third leases, the payments of rental already made were taken into account, and due credit given on the future rentals to be paid on the six machines covered by the second lease and the nine covered by the third lease. In the third lease the prior payments of rental made on the first and second leases on the six machines covered thereby were duly allowed for by the lump sum of $2,750, which in the third lease was termed a "down payment," on the meaning of which the construction of the contract largely turns. This fact was referred to by the court as evidencing the "down payment" or earnest money usually incident to a sale. We think such was not the fact. The term "down payment" was used in the two preceding bailment leases. Indeed, if those particular words are to be deemed evidence of a conditional sale, why should they not have the same effect in the two preceding contracts, which were concededly bailments? In reality, no such "down payment" was made in money when the third lease was made, but it was a credit of rentals already paid on leases one and two, which, as we have seen, were lawful, enforceable bailments, and which by such action were to that extent coupled up with the third lease.

When this third lease was executed, and as part of the transaction, notes of even date were then given covering in the aggregate the total rental and amounts stipulated in such third lease and within the period in which the aggregate rental was to be paid. This was done in pursuance of the contract provision, which was: "Rental to be paid as follows: $2,750.00 *down payment;* balance to be secured by notes, as follows: 29 notes for $400.00 each; one note for $450.00; one note for $700.00; first note due October First; $700.00 note due October 25th, 1928." The only provision in the lease for a sale was: "Provided, however, that if in addition to carrying out the above terms and conditions, *including the prompt payment of rent,*

the party of the second part also pays the sum of $1.00 within thirty days from the date of the last payment of rent, said machines shall become the property of the party of the second part, and the party of the first part shall give the party of the second part a bill of sale." And the contract nowhere else refers in any way to a sale and a passage of title. Moreover, the lease provided that, in the event of bankruptcy, the lease should terminate, and stipulated that the lessor could then enter and repossess himself of the machines. It will, therefore, appear that the conditions never arose when a bill of sale was to be made. Rex defaulted in payment of the rental and was adjudged bankrupt. According to the contract, the bailment then ended, and the right to repossess arose in these words: "And if default is made by the party of the second part in keeping any of the covenants herein on their part to be performed, then the said bailment shall forthwith cease and determine, and it shall be lawful for the party of the first part *to enter upon the premises where the machinery is kept and repossess themselves the same as though it had never been rented.*" On Rex's bankruptcy, Jacquard, alleging the rental had not been paid in full, as was the fact, presented a reclamation petition. In opposition thereto the trustee in bankruptcy alleged the machines had been sold to Rex by the third lease, and that Jacquard at its date passed title by such third agreement. The matter was referred to a referee, who sustained trustee's title, and the court below approved the referee's holding. Thereupon Jacquard took this appeal, and the question before us is whether the third contract was a bailment or a conditional sale.

In determining the true construction of this third agreement we must not treat it as an isolated transaction, but must, because of the ambiguity of its terms, consider it in connection with what the parties had theretofore stipulated and done and what they had in view when this third contract was made. Now there can be no question that, when the original three machines were installed, both parties intended simply a bailment or leasing of them in the Rex mill. There can be no doubt that such an arrangement was customary and legal and left the title of the machines in Jacquard, while it gave Rex the full use of the machines and provided for a future sale if the bailment was complied with and the rent paid in full.

Evidently the arrangement worked well, for, before Rex paid the rentals on the three machines, it desired three more under the same arrangement. These were leased by Jacquard, the first lease being surrendered and the six machines embraced in the second lease.

Now the intention of both parties being clear that a bailment of the three machines was their intent, and it being equally clear they had the same intent in view when three additional machines were delivered and the six machines included in a bailment lease, we are warranted in holding they had a like intent when the additional machines were delivered, and they and the six preceding machines included in the third lease, which is here in question. There is no proof that either party was dissatisfied with the previous and existing status. There was no evidence that Rex desired a sale or that Jacquard was willing to pass title. While the third lease was not an exact copy of the two preceding ones, there is nothing in its terms which necessitates our holding that it evidenced aught else than a substantial continuance of the then existing relation of the parties as bailor and bailee. True, the third lease did not contain a stipulation for return of the machines at the end of the bailment. But the absence of such stipulation is not controlling, for, as said in Federal Sales Co. of Philadelphia v. Kiefer, 273 Pa. 42, 116 A. 545, 546, "it is unnecessary for a bailment lease to stipulate for a return of the property, and the absence of a provision to that effect in those here in question is not controlling. Stiles v. Seaton [200 Pa. 114, 49 A. 774], supra; Edwards' Appeal, 105 Pa. 103; Jones v. Wands, 1 Pa. Super. Ct. 269; Porter v. Duncan, 23 Pa. Super. Ct. 58." Moreover, it did contain a provision for repossessing during the bailment term on breach of the agreement or on bankruptcy.

Without discussing the many cases in the Supreme and superior courts of the state, we are satisfied that the intent of Jacquard and Rex was not to pass title by sale when the machines were delivered, but was to create bailments thereof on rental, and that the conditional sale in futuro in the minds of the parties was only to take place when the bailee had made the specified payments. So regarding, we carry out the intent of the parties by holding, as we do, that, when the bankruptcy occurred, the machines were held pursuant to bailment, and that, on the bankruptcy of Rex and its failure and the failure of its trustee to pay the entire rental, the machines should be returned to Jacquard, the owner thereof. That was what the contract provided. The lessee went into bankruptcy, and thereupon the right to repossess stipulated

for was enforceable. The decree below will therefore be reversed, and the record remanded, with directions to deliver the machines to Jacquard.