**In re STEIN.**

No. 18825.

District Court, E. D. Pennsylvania.

Dec. 29, 1936.

588

Horenstein & Harvey, of Philadelphia, Pa., for petitioner.

M. Norman DuBois, of Philadelphia, Pa., for trustee.

Before DICKINSON, KIRKPATRICK, WELSH, and MARIS, District Judges.

MARIS, District Judge.

This matter comes before us on a certificate to review an order of the referee dismissing a petition of the National Cash Register Company filed to reclaim a cash register which was in the possession of the bankrupt at the time of the bankruptcy. The petitioner based its claim upon the proposition that the cash register was delivered to and held by the bankrupt under a bailment lease contract upon which the bailee was in default.

From the testimony it appears that the bankrupt desired to purchase a cash register, the cash selling price of which was $403.75, but he was unable to pay for it in cash. The representative of the National Cash Register Company thereupon presented to him a bailment lease, which he signed. This document valued the register at $425, and by it the lessor agreed to lease the register to the lessee for 24 months at a rental of $365 payable in 23 monthly payments of $15 each and one of $20. The lessee agreed to give a promissory note to the lessor for $365 payable in similar monthly payments as collateral security for payment of the rental and he further agreed to pay the lessee $60 forthwith as a deposit to partially secure fulfillment of the agreement. At the same time he turned in to the lessor an old cash register and by the agreement was given a credit for it of $50 against the $60 deposit above mentioned. The contract further provided that at the expiration of the rental term the lessee would surrender it to lessor, whereupon the lessor was to return the amount paid as a deposit if all the terms of the lease had been complied with, and the lessee was given the option, after surrendering the register, to purchase it upon payment to the lessor of the said amount deposited as partial security.

After the signing of the bailment lease the cash register was delivered to the bankrupt and remained in his possession until bankruptcy. He paid the deposit of $60 (including the return of the old cash register), and a total of $150 on account of the rental, but defaulted in the payment of the balance. The bankrupt testified that a little over a month after he had signed the lease and received the register he called up the representative of the company and said that he did not think he could keep a register like that and asked whether they had anything else. We quote from his further testimony on this point: "The credit man says, 'What do you mean? Didn't you buy that register?' I says, 'No. I only took it with the understanding after Christmas if you have something for less in, I will get it. If not, I am not going to keep this register. I will take my own back.' He says, 'I will see about it then I will let you know.' Then I didn't hear anything for about ten, 15 days. Then I wrote a letter to the president of the firm, begged him to take the register back and he says, 'I am sorry, we cannot take it back. We sold it. You will have to keep it'; or else they threatened to levy on me." On these facts the referee determined that the contract in question was in reality a conditional sale, and since it was not recorded, the title as between the claimant and the trustee was in the trustee. He, therefore, dismissed the reclamation petition.

Whatever may have been the prior view, it may now be accepted as settled that this court will follow the decisions of the Pennsylvania courts in construing bailment leases and conditional sales contracts. This was clearly and definitely decided by our Circuit Court of Appeals in General Motors Acceptance Corporation v. Horton, 85 F.(2d) 452. It was pointed out in that case that a contract, such as was there involved, which was in fact, though not in form, a conditional sale, has long been construed by the Pennsylvania courts as a bailment lease and sustained as such in accordance with its form.

As we read the Pennsylvania decisions, they uniformly hold that if at the time a bailment lease is entered into the parties have not already made and completed a conditional sale of the chattel which is the subject of the bailment, the contract will be sustained as a bailment lease, if such in form. This is so even

though the original intention of the parties was to make a sale and their present intention is that a sale shall take place on compliance with the conditions of the lease. The use of a bailment lease under such circumstances rebuts any presumption that the owner was willing to sell the chattel purely on credit which might arise from his original intention to make a sale. In the absence of evidence showing such a willingness the form into which the parties have cast their transaction will be sustained. Leitch v. Sanford Motor Truck Co., 279 Pa. 160, 123 A. 658; Brown Bros. v. Billington, 163 Pa. 76, 29 A. 904, 43 Am. St.Rep. 780; General M. A. Corp. v. Hartman, 114 Pa.Super. 544, 174 A. 795; National Cash Register Co. v. Shurber, 41 Pa. Super. 187.

Applying these principles to the present case, we may admit, as the Circuit Court of Appeals did in General Motors Acceptance Corporation v. Horton, supra, and as the referee found, that the transaction between the parties amounted in fact to a conditional sale. We may also admit that it was their intention by adopting the form of a bailment lease to secure the payment of the purchase price. It does appear, however, that the parties themselves cast the transaction into bailment lease form, and we find no evidence in the record that a conditional sale had been made or completed prior to the execution of the lease. Nor do we find any evidence indicating that the petitioner was willing to make sale to the bankrupt purely on credit. On the contrary, its insistence upon the use of a bailment lease clearly indicates its unwillingness to do so.

The trustee in bankruptcy, however, calls our attention to the testimony that after the transaction was entered into it was described by representatives of the petitioner as a sale, the bankrupt's testimony being that they said: "Didn't you buy that register? * * * We sold it. You will have to keep it." He argued that by these statements the petitioner defined the ·contract as a sale. That statements of this character made after the transaction was completed are not sufficient to change the bailment into a conditional sale is ruled by National Cash Register Company v. Shurber, supra. In that case a bailment lease, substantially the same as the one here involved, was entered into under very similar circumstances. About a month afterward the bailees left the cash register with one Liberakis to be delivered to the bailor. Thereupon the bailor forwarded to Liberakis a box in which to ship the register back to them and at the same time one of its agents wrote him a letter in which it was stated: "Vergos & Kyramis, who were in business in your town, and to whom we sold one of our cash registers. * * *"

Although it does not appear in the opinion of the superior court, an examination of the printed record in that case discloses that about a month later a representative of the bailor wrote another letter to Liberakis stating: "Some time ago we wrote you with reference to register which we sold to Vergos & Kyramis. * * *" The record in the Shurber Case also discloses that the defendant in that case strongly urged that these two statements by representatives of the bailor that they had sold the register to the defendant constituted evidence that the transaction was a conditional sale of sufficient weight to require that question to be submitted to the jury. The court below ruled, however, that the contract was one of bailment lease and so instructed the jury, which found for the plaintiff. The superior court affirmed the judgment, holding that the court was right in its construction of the writing which contained all the essentials of a contract of bailment.

It will thus be seen that the statements alleged to have been made by the officers of the petitioner in the present case were essentially similar to those relied on in the Shurber Case and the written instrument in each case was also essentially the same. Upon the authority of that case and the other Pennsylvania decisions to which we have referred, as well as General Motors Acceptance Corporation v. Horton, supra, the order of the referee must be overruled.

The order of the referee is overruled and the trustee in bankruptcy is ordered to turn over and deliver to the National Cash Register Company the cash register described in its reclamation petition.

DICKINSON, District Judge (dissenting).

This case presents a question with which referees in bankruptcy are now confronted in almost every bankruptcy case. There should be a uniform rule of. decision and the parties not left to the accident of to whom the cause is referred or the judge who hears the petition for re-

view. This and other cases raising the like question. were because of this set down for a hearing before the court in banc so that referees would have an authoritative guide.

Nowadays in almost every bankruptcy case, as ·in this, a reclamation claim is presented asserting the right of a vendor of property who has sold it on credit and delivered possession to the vendee, to reclaim it from the hands of a trustee in bankruptcy if the purchase price has not been paid. In former times such a claim would not have been even presented, but to-day it is aggressively asserted, provided only that the vendor has had the vendee sign a so-called bailment lease, and that this is in approved valid form. There is no doubt that the business of selling on the installment plan of extending credit has tremendously increased and that great and powerful forces are now enlisted in the effort to change the law. No one can blame them for striving to secure the payment of what is owing to them, but whether the policy they advocate would be for weal or woe is a question for the Legislature but not the courts to answer.

Happily, the members of this court have always been in accord and still are upon the question presented, except upon the interpretation to be given to the ruling of the Circuit Court of Appeals in the case of General Motors Acceptance Corp. v. Horton, 85 F.(2d) 452. We are not called upon to vindicate the soundness of that ruling, but it is our function to rightly interpret it and to give to that interpretation loyal adherence.

It is strongly urged upon us that the cited case rules that the old policy of the law has been reversed and that now a sale of goods may be made on credit and possession delivered to the vendee and that the vendor may reclaim the property from the hands of an innocent purchaser for value or an execution creditor or a trustee in bankruptcy if the purchase price is not fully paid, provided only, as before stated, that the vendor has had the vendee sign what is known as a bailment lease, which is found to be in valid form. On the contrary, that case rules only that in construing the bailment as a writing it must be construed as a bailment and cannot be construed as a bill of sale.

This is precisely the question which this court had before it in the Sobern's Men's Shop Case (In bankruptcy No. 17,-931).[1] There the referee had found the transaction to have been a conditional sale, and hence had very properly dismissed a reclamation petition. He had, however, found the fact of sale from no other evidence than that supplied by the writing itself. The referee was reversed by this court per Kirkpatrick, Judge, not on his law, but because he had found a fact without supporting evidence. The bailment was a writing as such to be construed and could not by itself be construed as a conditional sale, whatever the real truth may have been.

That is precisely what the General Motors Case rules. The ruling has no application to the instant case. Here the referee, who has had a wide experience as a fact finder, has found that in truth and fact the transaction was a sale and this court unanimously approves the finding as one made from ample evidence. The question of law presented must be answered with this fact in the case.

We are all in accord on the proposition that an owner of property may part with its possession by letting it out on hire without losing his title and that the law protects him in this right.

We are also agreed that if he sells the property, although on credit, and delivers possession to his vendee, thus clothing the vendee with all the indicia of ownership, he cannot afterwards, because the purchase price has not been fully .paid, reclaim the property from an innocent purchaser for value or an execution creditor.

To shorten the argument we concede that a bailor may safely grant to the bailee the further right or privilege to purchase the property at a stated price during or at the end of the term of bailment.

We likewise concede that the question here being one of title is to be determined by the law of Pennsylvania. What is that law? It is and always has been what has been already formulated, that if a vendor sells his property and delivers possession to the vendee, thus clothing him with all the indicia of ownership, it is a legal fraud on deceived innocent purchasers for value or execution creditors to attempt to reclaim the property because the purchase price has not in whole or in part been paid.

We have not space to cite the numerous cases in Pennsylvania which support this

---

[1] No opinion for publication.

doctrine, nor is it necessary. There is not a single case to the contrary in any jurisdiction in which the Statute of Elizabeth against fraudulent conveyances is in force. Whether the doctrine or policy is a principle of what we call the common law or has its origin in the statute, so saturated with it is the law of Pennsylvania that it has found expression in familiar adages, such as that the law abhors secret liens and the like. The Statute of Elizabeth is in force in Pennsylvania (39 P.S.Pa. following section 363). Roberts Digest of British Statutes.

Throughout the whole history of litigation there have been ingenious attempts made to elude this law. Every device which professional ingenuity could devise has been resorted to in vain. None of them have been permitted to succeed. Every session of the Legislature has witnessed the attempt to change the law. It has been relaxed in favored instances. These, however, have been few and exceptional. The latest is the Conditional Sales Act. Vendors are unwilling to conform to this act. Its very passage, however, proclaims adherence to this law. Why otherwise the need to pass such an act? The latest device to annul the law is the so called bailment lease. There is no magic in these words. Why should this device succeed when all others have failed? If it does it is due to its cleverness. It is a most excellent instrument of deception. As we have said, an owner of property may let it out on hire and part with its possession without losing his title or he may sell it. Whether he in truth and fact does one or the other may at times be. difficult to determine.

The proposition urged upon us, however, is that all the vendor has to do is to call the sale a bailment and have the vendee sign a bailment lease and the trick is turned. It would insult the intelligence of any one to accuse him of being so duped. The only chance of success this new device has is in this. The question is one of fact and the fact of sale may be camouflaged as a bailment. This cannot, however, in this case be done, as the fact that this transaction was a sale is an admitted fact. The question is whether a sale can be turned into a bailment by the mere signing of a bailment lease. We are urged to. say that it can because the Circuit Court of Appeals has so ruled in the General Motors Case, and stress is laid upon certain expressions in the opinion. Judicial utterances are always to be read in the light of the fact situation to which they apply. When so read, the court ruled in the General Motors Case what Judge Kirkpatrick ruled in the Sobern's Men's Shop Case.

A cynic has given us as a definition of Faith that it is "the ability or capacity to believe in the truth of what we know aint so."

We cannot lay claim to this capacity and find that a transaction was a bailment in face of the fact that we have found it to be in truth a sale.

The learned referee has vindicated his order in a full discussion of the question. There is no need to fortify his findings with a citation of authorities. If, however, they are called. for they may easily be found in abundance. Among them we cite: Clow v. Woods, 5 Serg. & R. (Pa.) 275, 277, 9 Am.Dec. 346; Ott v. Sweatman, 166 Pa. 217, 31 A. 102; Jacquard Knitting Mach. Co. v. Vennell (C.C.A.) 59 F.(2d) 496, opinion by Buffington, J.; Root v. Republic Acceptance Corp., 279 Pa. 55, 123 A. 650.

For this and other reasons, which will occur to any one considering the question, I very respectfully, but most earnestly, dissent from the decision of the majority reversing the order of the referee.