## Department of Environmental Resources v. Conley

*Hershel P. Richman,* for Department of Environmental Resources.

*Edward L. Conley,* p.p., for appellant.

WATERS, Member, May 8, 1973.—This action is an appeal from the revocation of a permit granted to appellant Edward L. Conley, to install a septic tank for sewage disposal on his building lot in New Hanover Township. The permit was issued by the township, whose authority to issue permits was subsequently taken over by the Commonwealth.

The issue involved is delicate and complicated by the fact that Mr. Conley, now pressed economically, has on hand a piece of realty purchased at some sacrifice to build a home for his family, and has now been instructed that he may not legally build that home. In short, he cannot sell it and he cannot use it for its intended purpose. He therefore questions whether he has received just treatment.

## FINDINGS OF FACT

1. Appellant Edward L. Conley is an adult individual residing with his wife and children in Gilbertsville, Pa.

2. On or about June 7, 1971, appellant had settled on the purchase of a building lot located in New Hanover Township, Montgomery County, Pa.

3. The building lot is located less than two miles from appellant's present place of residence.

4. Prior to purchasing the lot, appellant contacted the engineering firm of Urwiler and Walter to have them conduct soil tests to determine the suitability of the lot for an on-site sewer system.

5. The test results given to appellant were satisfactory and application was made to the proper township authorities for the issuance of a permit for the sewer system prior to June of 1971.

6. The township issued Permit No. 097252 to appellant for the installation of an on-lot sewer disposal system on or about May 25, 1971.

7. Appellant had intended to complete the construction of a home on the lot, but soon after digging for a foundation was begun, financial reasons made it impossible for appellant to continue construction.

8. Appellant put the lot up for sale, and a sign so indicating was placed thereon.

9. A similar permit had been granted by New Hanover Township for the lot adjoining appellant's property, and construction proceeded to completion.

10. On August 2, 1971, Chapter 71, Administration of Sewage Facilities Act, Rules and Regulations, were adopted by the Commonwealth, and revised April 20, 1972: Pennsylvania Sewage Facilities Act of January 24, 1966, P. L. (1965) 1535, 35 PS §750.1, et seq.

11. On June 6, 1972, the Commonwealth of Pennsylvania Department of Environmental Resources notified the Secretary of New Hanover Township that the township's authority to issue permits under and administer the Pennsylvania Sewage Facilities Act was revoked immediately.

12. The reason given for the revocation of the township's authority was the improper issuance of a permit to one Justin L. and Mary V. Mullin on May 30, 1972.

13. Some time in November of 1972, an agent of the Department of Environmental Resources, while inspecting the property adjoining appellant's lot, by accident noticed a "For Sale" sign on appellant's lot, and decided to investigate further.

14. The department agent found evidence of a high-water table and determined that the soil was not proper for an on-site system.

15. On November 9, 1972, the owner of the lot adjoining appellant was notified that his on-site system was approved although it did not meet State

requirements, inasmuch as the house was already completed.

16. On November 29, 1972, appellant was notified that his Permit No. 097252 was revoked due to the soil conditions.

17. In January of 1973, the department made a further and more detailed study of appellant's lot, without notifying him of its intention to do so. A search warrant was obtained for this purpose and the Chief of Police was present.

18. At the inspection in January of 1973, a soil scientist for the department again determined that the lot did not meet State standards for the installation of an on-site disposal system.

## DISCUSSION

This case is a clear example of the value of rules of law that are applied equally to all men regardless of their economic standing. One man of modest means without counsel, against the government of his State with all of its resources, regardless of the merits of his cause, would not stand a chance of success but for our system of justice.

Edward L. Conley, hereinafter called appellant, set out to do what the American dream said that he should do, i.e., to build a new home closer to his job, for his wife and children. Mindful of the intricacies of his endeavor he consulted with experts, a lawyer to obtain a good title in the transfer and an engineer to determine whether the lot he desired to buy was suitable for its intended purpose.

After all indications were in the affirmative, appellant applied for and received a permit for an on-lot sewage disposal system for New Hanover Township, where his building permit authorized him to construct

a home. Thereafter, during the initial stages of digging for a foundation, unforeseen financial difficulties arose and construction was halted.

It is at this point, the plot begins to thicken. By chance, an agent of the Department of Environmental Resources, while inspecting a lot adjoining the one owned by appellant, decided that it would be a good idea since he was already in the area on another matter, to check appellant's lot to see if the soil was suitable for an on-lot system. Without any notice to appellant, and without any warrant of any kind he simply went onto the private property and began his "investigation." It was no surprise when he determined, by a hand instrument, that appellant's lot was just as unsuitable as the lot next door, which was his subject of original interest. The agent went back to his office, determined who owned the lot, found out that a permit had been issued by the township, and sent a letter to appellant revoking the same.

One of the reasons for concern at the adjoining property was the fact that the township had issued at least one permit improperly, and its authority to administer the program was terminated by the State Department of Environmental Resources on June 6, 1972. Appellant's permit appeared to have been another result of the township's impropriety in handling the Sewage Facilities Act. The regulations under which the department acted in revoking appellant's permit were promulgated on August 2, 1971, two months after appellant had made his purchase and received the permit. It is therefore my opinion that the department had no right to revoke the permit here in question. The Pennsylvania Sewage Facilities Act, 35 PS §750.1, in the absence of regulations does not author-

ize the department to revoke a permit granted by a municipality.[1]

The same result must be reached for another reason. The law provides where a representation is made and another is induced to rely thereon, the person making the representation is estopped from denying the validity thereof after the second party has with justification changed his position in reliance thereon: West Mifflin Borough v. O'Toole, 108 Pitts.L.J. 95; Sunseri v. Sunseri, 358 Pa. 1; Commonwealth ex rel. Attorney General v. Bala & Bryn Mawr Turnpike Co., 153 Pa. 47. The doctrine of estoppel could not be more clearly operative than here. Appellant was induced to believe that he had a good, valid and proper permit issued to him by the township which, it is not disputed, was authorized to issue the permit. There was nothing more that the appellant could have done to protect himself. The Commonwealth now proposes to revoke the permit after appellant has purchased the lot and started construction. He was specifically asked at the hearing:

"Mr. Waters: Would you have purchased this lot in June, would you have gone through with that purchase if you had known there was a problem with the permit?

"Mr. Conley: I certainly would not."

We believe that the department is estopped from now revoking a permit granted by one with authority to do so, without a showing of fraud or some improper conduct on the part of appellant: National Cash Register Co. v. Shurber, 41 Pa. Superior Ct. 187.

Another matter which deserves mention at this

---

[1] We do not decide the extent of the authority under the regulation in question.

point is the manner in which this whole affair was conducted. We believe that, where the department intends to go onto the private land of another and there is no urgency to the intrusion as here, at the very least some notice should be given to the owner so that he might elect whether or not he desires to be present with or without counsel to protect his interests. In my opinion this should not be done as a matter of mere courtesy but as a matter of right. Appellant was not being charged with a crime and he was available in the county. If the Chief of Police was to be invited, as on the second intrusion when the warrant was obtained, why not appellant himself, whose interest is more tangible?

Finally, we believe that if we were to uphold the revocation of the appellant's permit it would be in violation of the Equal Protection Clause of the United States Constitution.[2] The record indicates that the reason the department's agent went to the scene was to inspect a sewage system installed on an adjoining lot under a permit previously issued by New Hanover Township. It so happened that this lot owner was financially able to complete his home. The soil conditions were substantially the same. Nevertheless the permit was not revoked, and the installation was approved by the department. The fact is that the only difference between the adjoining owner and appellant is that the former was in a better economic position to obtain mortgage money. I submit that under our Constitution this is not a sufficient distinction. I reject any attempt to deal with our citizens in this

---

[2] It not only proscribes the enactment of discriminatory laws, but also the discriminatory enforcement of laws which are fair on their face: Yick Wo v. Hopkins, 118 U.S. 356 (1886). See also Note, Discriminatory Law Enforcement and Equal Protection from the Law, 59 Yale L. J. 354.

fashion and I believe the United States Supreme Court would do no less.

We are, of course, mindful of the fact that the only legitimate interest the department has is to prevent pollution of the waters of the Commonwealth and forestall any future health hazard from a malfunctioning septic system. Appellant should want no less. It may be that an injunction should be issued to prevent these conditions. The board is without the power to issue an injunction, nor was it sought. We decide today, only that the permit which was issued in this case may not be revoked on the facts and the laws before us. What, if any, future action is called for must abide the event.

## CONCLUSIONS OF LAW

1. The Environmental Hearing Board has jurisdiction of the parties and the subject matter.

2. The department has no authority to revoke a permit granted by a municipality authorized to issue it prior to August 2, 1971.

3. The department is estopped from revoking a sewage disposal permit issued by a township with authority to do so where there is no showing of wrongdoing on the part of the permittee and he has changed his position by purchasing a lot and starting construction, prior to the revocation.

4. The Equal Protection Clause of the United States Constitution requires that a citizen may not be dealt with differently by the State in issuing or revoking permits under substantially the same fact situation.

5. The Environmental Hearing Board does not have injunctive powers.

## ORDER

And now, May 8, 1973, it is hereby ordered that the

appeal of Edward L. Conley is sustained and the letter of revocation issued by the Department of Environmental Resources on November 27, 1972, is hereby declared to be null and void.